**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Armando MIR, Defendant–Appellant.**

**No. 89–5695.**

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1990.

Richard E. Langlois, San Antonio, Tex. (court appointed), for defendant-appellant.

Philip Police, LeRoy Morgan John, Mark Barrett, Asst. U.S. Attys., and Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, WILLIAMS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendant Armando Mir was charged with one count of conspiracy to possess and distribute cocaine and one count of possession of cocaine with intent to distribute. Pursuant to a plea agreement, Mir pleaded guilty to possession with intent to distribute, and the district court dismissed the conspiracy count.

The court calculated Mir's offense level at 20, with four points added for Mir's role as a leader of the conspirators. On appeal, he asserts that the court erred by considering extraneous conduct in setting his base offense level and that the court could not give him a four-point upward adjustment for his leadership role because the count to which he pleaded guilty involved him alone. Finding no error, we affirm.

## I.

The facts of this case in large part are not disputed and are contained within Mir's plea bargain. On July 19, 1988, Mir sold and delivered 27.68 grams of ninety-four-percent cocaine to Martene Wade, an undercover agent for the Drug Enforcement Administration (DEA). At that time, Wade asked Mir the price for a kilogram of cocaine, and Mir replied "twenty-two," meaning $22,000 per kilogram. Mir agrees that he sold the cocaine to Wade but denies that he told Wade that he actually had a kilogram of cocaine to sell.

Mir and seven codefendants were charged in an eight-count indictment with various narcotics and conspiracy offenses. Mir was named in two of the eight counts; however, he agreed to plead guilty to one count of possession with intent to distribute cocaine in exchange for the dismissal of the remaining conspiracy charge.

In the presentence investigation report ("PSI"), the probation officer stated that Mir and Alfredo Barbontin controlled a cocaine distribution network comprised of Cuban expatriates.[1] The PSI also described several undercover agents' purchases of cocaine from that organization. These narcotics transactions included two additional sales to Wade conducted personally by Mir. Including the sale to which Mir pleaded guilty, total sales personally conducted by Mir totaled 100.38 grams.

At the sentencing hearing, DEA special agent Tommy Harr testified for the government regarding Mir's role as a leader of a cocaine distribution ring. Harr's testimony covered several narcotics transactions that were not mentioned in the PSI. One of these was his January 1988 purchase of 226 grams of cocaine from Ricardo Alanzo, Maria Alanzo, and Romelio Agant. While arranging that transaction, Harr observed Ricardo Alanzo dial Mir's telephone number. The next day, Mir and his wife drove the Alanzos and Agant to the prearranged location, where they delivered the cocaine to Harr. Mir observed the transaction from his car.

Harr also named seventeen individuals whom Mir supervised as part of his cocaine distribution organization. Three of these individuals, who were Albert Vega Alfonso, Andres Perez, and Luis Cantu, identified Mir as their supplier while they were dealing with Harr in his undercover capacity. Mir did not call any witnesses, although he did make a statement in which he denied participating in any narcotics sales other than the one to which he had pleaded guilty.

The probation officer recommended a base offense level of 20 based upon a total of 231.30 grams of cocaine sold to the undercover agents by Mir and his codefendants. See U.S.S.G. § 2D1.1(a)(3). In addition, he recommended a four-level upward adjustment on the ground that Mir was a leader or organizer of the narcotics conspiracy. See id. § 3B1.1(a). The sentencing range for a level 24 offense for a category I defendant such as Mir with no criminal history is 51 to 63 months.

The district court accepted the PSI and set Mir's base offense level at 20 because of his involvement in the distribution of more than 200 grams of cocaine and assessed four additional points for Mir's role as a leader or organizer. The court adopted the factual statements made in the PSI and sentenced Mir to 63 months in prison, five years of supervised release, and a $5000 fine.

## II.

Mir contends that the district court erred by considering more cocaine than the twenty-seven grams to which he pleaded guilty as part of his plea bargain. In addition, Mir argues that the four-level upward adjustment was unwarranted, as the district court should not have looked beyond his immediate offense in determining whether Mir was the leader of a conspiracy.

---

1. For further information on the activities of Mir and his codefendants, see United States v.

Barbontin, 907 F.2d 1494 (5th Cir.1990).

■ As for the first argument, Mir does not dispute that the court could consider offenses beyond those of which he had been convicted. Rather, Mir contests the factual determination that he was involved in the sale of more than 200 grams of cocaine. We will reverse this factual determination only if it is clearly erroneous. *See, e.g., United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir.1989); *United States v. Buenrostro,* 868 F.2d 135, 137 (5th Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). Any unadjudicated conduct considered in determining sentence must be supported by a preponderance of the evidence. *McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986).

The district court set Mir's base offense level at 20, which covers defendants who distribute between 200 and 300 grams of cocaine. *See* U.S.S.G. § 2D1.1(c)(12). In arriving at level 20, the district court determined that Mir and his coconspirators had sold at least 231.30 grams of cocaine.

■ The district court correctly could consider more than the twenty-seven grams mentioned in Mir's plea agreement. Under the guidelines, the base offense level can reflect quantities of drugs not specified in the count of conviction if they "were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *United States v. Taplette,* 872 F.2d 101, 105 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989); *see* U.S.S.G. § 1B1.3. Here, the facts as detailed in the PSI established that Mir was involved in a drug conspiracy and that, as part of the conspiracy, he and his codefendants distributed 231.30 grams of cocaine in ten separate transactions.[2]

■ Even a cursory examination of the facts shows that the trial court, if anything, was lenient in calculating Mir's offense level. To begin with, Mir *personally* delivered to Wade 100.38 grams of cocaine. Moreover, the PSI presented credible evidence that Victor Mir and Luis Cantu worked for defendant Armando Mir, and those two co-defendants were implicated in four deliveries totaling 130.56 grams of cocaine. These two calculations alone support an offense level of 20, even without taking into account the cocaine delivered to Harr by persons directly linked to Mir. Under these circumstances, the trial court did not err in setting Mir's offense level.

■ Finally, we note that although Mir objected to his PSI at certain points, he offered no rebuttal evidence to refute any of these facts. The district court therefore was free to adopt the facts in the PSI without further inquiry. *United States v. Mueller,* 902 F.2d 336, 346 (5th Cir.1990).[3] The conclusion that Mir was involved in the distribution of at least 200 grams of cocaine thus is not in error.

### III.

Section 3B1.1(a) of the guidelines provides for a four-level upward adjustment "[b]ased on the defendant's role ... [as] an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The district court assessed this adjustment after finding, based upon the PSI and Harr's testimony, that Mir was an organizer in a complex distribution organization.

We review the district court's fact-finding regarding Mir's status as an organizer only for clear error. *See United States v. Rodriguez,* 897 F.2d 1324, 1325 (5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 158,

---

**2.** The government asserts that the district court did indeed miscalculate the base offense level but that this error benefited Mir. Specifically, it contends that Mir's proper base offense level should have been set at 26 to include the kilogram he discussed selling to Agent Wade. We note, however, that the conversation between Wade and Mir was sufficiently vague to make it difficult to determine whether Mir's quotation of a price could constitute negotiations to traffic in a controlled substance under § 2D1.4. We

need not address this issue now, however, as the government has not taken a cross-appeal and does not ask us to vacate and remand so that the district court may begin its calculations at offense level 26.

**3.** Mir also contends that the PSI contains hearsay, but hearsay is admissible at sentencing. *United States v. Byrd,* 898 F.2d 450, 452–53 (5th Cir.1990).

112 L.Ed.2d 124 (1990). Both Harr's testimony and the facts developed in the PSI reveal that Mir was a leader or organizer of a narcotics ring consisting of more than five persons, including Mir's two sons, Victor and Virgilio, his grandson, Felix Orta, and at least three other individuals, i.e., Luis Cantu, Julia Castro Hammond, and Enrique Bernal.

■ This factual finding is not at issue, however. Mir contends that this information cannot be considered at all in determining his leadership role, as he was convicted under a count alleging that he alone possessed and intended to distribute cocaine. Mir argues that although codefendant Cantu was present when he distributed the twenty-six grams, there was no evidence that Cantu was acting under Mir's direction or that any other participants were involved in that transaction.

We note that this is not the first time we have visited this issue or, for that matter, this very cocaine distribution ring.[4] In *Barbontin* we confronted a drug conspiracy involving at least ten persons. At sentencing, however, the government failed to show that five or more of them were involved in the actual transaction leading to Barbontin's indictment and plea bargain. 907 F.2d at 1497. We thus vacated and remanded for resentencing.

*Barbontin* established that in this circuit, under section 3B1.1, the government cannot delve into unrelated transactions in an attempt to round up the requisite number of conspirators. We thus held that "for purposes of measuring the size of the enterprise, we conclude that section 3B1.-1(a) focuses upon the number of *transactional* participants, which can be inferentially calculated provided that the court does not look beyond the offense of conviction to enlarge the class of participants."

*Id.* at 1498 (emphasis in original). We also held that the section 3B1.1(a) adjustment must be anchored to the transaction leading to the conviction. *Id.*[5]

We did not hold, however, that a trial court must don blinders and look solely to the narrowest possible offense charged when evaluating whether an upward adjustment is warranted under the guidelines. It is well established that the "district court can consider a broad range of conduct in assessing a defendant's offense level under the guidelines and is not limited solely to the conduct for which the defendant is being sentenced." *United States v. Edwards*, 911 F.2d 1031, 1033 (5th Cir. 1990). This is a position supported by the guidelines, which explicitly state in their general application principles that "[i]n many instances, it will be appropriate that the court consider the actual conduct of the offender, even when such conduct does not constitute an element of the offense."

*Barbontin* did not change this. Although *Barbontin* expressed concern that trial courts should evaluate leadership within the context of the transactional participants, it did not define section 3B1.1's "offense" so narrowly as to limit it to the precise activity comprising the bare elements of the offense charged.

Our recent opinion in *United States v. Manthei*, 913 F.2d 1130 (5th Cir.1990), clarifies this analysis. There, the defendant was charged with conspiracy to distribute amphetamines. All charges were dropped as part of a plea agreement, save a single count charging Manthei with the distribution of two ounces of amphetamines. *Id.* at 1132. The court nonetheless increased Manthei's offense level for her role as a leader in the conspiracy underlying her distribution count.

---

**4.** *See Barbontin; United States v. Hammond*, 912 F.2d 1466 (5th Cir.1990) (unpublished); *United States v. Mir*, 903 F.2d 825 (5th Cir.1990) (unpublished); *United States v. Ponce*, 917 F.2d 841 (5th Cir.) (unpublished), *modified on rehearing*, 917 F.2d 846 (5th Cir.1990).

**5.** *Accord United States v. Mourning*, 914 F.2d 699, 705 (5th Cir.1990) ("The court may only

apply this aggravating factor if the defendant maintained a leadership role in the transaction on which his conviction is based."); *United States v. Williams*, 891 F.2d 921, 926 (D.C.Cir. 1989); *United States v. Lanese*, 890 F.2d 1284, 1293–94 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990).

Although Manthei made the same arguments urged upon us by Mir in this case, we nonetheless affirmed the trial court's calculation of her offense level. We first noted that it was not dispositive that she was the only person involved in the offense charged. Because there was extensive evidence that she was involved in other elements of the distributive chain, we held that the district court properly increased her offense level under section 3B1.1. *Id.* at 1135. We also noted that "the 'offense' for § 3B1.1(a) purposes includes 'criminal activity' greater in scope than the exact, or more limited, activity comprising the elements of the offense charged." *Id.*

The defendant in *Manthei*, like Mir in the present case, had read *Barbontin* as defining transactional participant so narrowly as to preclude any examination of the context of the crime beyond the minimal elements necessary for conviction. We rejected that interpretation and noted that where the government has carried its burden of showing that the adjustment was " 'anchored to the transaction leading to the conviction,' " *id.* at 1136–37 (quoting *Barbontin*, 907 F.2d at 1498), "it is not necessary for participants to be charged in the offense in order to be considered for § 3B1.1(a) purposes." *Id.* at 1137.

 Thus, *Barbontin* and *Manthei* instruct that while an upward adjustment for a leadership role under section 3B1.1 must be anchored in the defendant's transaction, we will take a common-sense view of just what the outline of that transaction is. It is not the contours of the offense charged that defines the outer limits of the transaction; rather it is the contours of the underlying scheme itself. All participation firmly based in that underlying transaction is ripe for consideration in adjudging a leadership role under section 3B1.1.

Any doubt concerning this conclusion must vanish in the face of a recent clarifying amendment promulgated by the United States Sentencing Commission, effective November 1, 1990. This amendment was not intended to change the law, *see* 55 Fed.Reg. 19,202 (1990), but the clarity of the new language of section 3B1.1 makes it self-evident that the district court correctly calculated Mir's offense level under section 3B1.1.

The new introductory commentary provides,

> The determination of a defendant's role in the offense is to be made on the basis of *all* conduct within the scope of section 1B1.3 (Relevant Conduct), *i.e.*, all conduct included under section 1B1.3(a)(1)–(4), *and not solely on the basis of elements and acts cited in the count of conviction.*

U.S.S.G. § 3B1.1 introductory commentary (emphasis added). The application note adds that "[i]n assessing whether an organization is 'otherwise extensive,' *all persons involved during the course of the entire offense are to be considered.*" (Emphasis added.). This language shows that section 3B1.1 is intended to comport with other guidelines sections allowing a sentencing judge to look beyond the narrow confines of the offense charged to consider all relevant conduct.[6]

In the instant case, the anchoring transaction was the sale and delivery of 27.68 grams of cocaine to Wade. This sale was not conducted with the aid of the four additional participants required by *Barbontin*. Were Mir a customary reseller of cocaine, this fact presumably would make an upward adjustment under section 3B1.1 inappropriate.

---

6. For example, in *United States v. Mejia–Orosco*, 867 F.2d 216 (5th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989), we affirmed an upward adjustment based upon § 3B1.1 where the defendant had acted alone in committing the offense charged. In doing so, we stated, "[t]he undisputed evidence that relatives of the aliens were involved in the crime provides sufficient support for this factual finding." *Id.* at 222. The relatives, however, were not named in the offense charged. Similarly, in *United States v. Garza*, 884 F.2d 181 (5th Cir. 1989), we affirmed an erroneous upward-departure sentence on the ground that a properly calculated sentence would have increased Garza's sentence by four levels because of his role as its organizer or leader. Again, we looked beyond the offense charged to justify the application of § 3B1.1. *Id.* at 184.

**946**

Mir was much more than a casual reseller, however. As did the defendant in *Manthei*, Mir controlled his own source of illegal drugs. As the PSI detailed, his cocaine distribution ring was the source of the drugs sold to Wade. The guidelines were not intended to treat the leader of a cocaine ring, who orchestrates his own supply network, in the same manner as a defendant who merely buys drugs from an outside source. Mir's position would require this result and thus, under both *Manthei* and the clear language of the recently clarified guidelines, must be rejected.

In sum, the plain language of section 3B1.1 permits the sentencing court to consider all conduct linked to the transaction, even if it falls outside the four corners of the conviction itself. Since the district court correctly calculated Mir's offense level under the guidelines, its judgment of sentence is AFFIRMED.