**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Armando RODRIGUEZ,
Defendant–Appellant.**

**No. 90–5562
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 19, 1991.

George Scharmen, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Richard F. Durbin, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before KING, GARWOOD and DUHÉ, Circuit Judges.

KING, Circuit Judge:

Jose Armando Rodriguez (Rodriguez) appeals his sentence for violations of 31 U.S.C. § 5324. Rodriguez contends that the district court erred by its application of the United States Sentencing Guidelines (Guidelines or U.S.S.G.). Finding no merit to Rodriguez's contentions, we affirm the sentence imposed by the district court.

## I.

On October 4, 1989 Rodriguez was indicted on two counts of structuring transac-

tions to evade reporting requirements in violation of 31 U.S.C. §§ 5324(1) and 5324(3).[1] Count One alleged that on June 6, 1989, Rodriguez engaged in five transactions, each in an amount less than $10,000, aggregating $24,000, for the purpose of evading § 5313(a)'s reporting requirements. Count Two alleged that on July 5, 1989, Rodriguez attempted to cause a domestic financial institution, Frost National Bank (Frost Bank) in San Antonio, Texas, to fail to file a CTR in connection with a $25,400 transaction.

Rodriguez agreed to plead guilty to both counts of the indictment. In return, the government agreed not to prosecute Rodriguez for certain other violations.[2] In addition, the government agreed not to oppose Rodriguez's request for a reduction in the applicable Guidelines offense level to reflect his acceptance of responsibility as provided by U.S.S.G. § 3E1.1. Rodriguez stipulated that, for purposes of calculating his sentence under U.S.S.G. § 2S1.3(b), the funds involved in the charged offense were "criminally derived property." Rodriguez entered his guilty plea to both counts on February 1, 1990.

On April 13, 1990, the district court sentenced Rodriguez to two concurrent terms of 37 months in prison, followed by three years of supervised release, a $5,000 fine, and mandatory assessments totalling $100. In determining the length of Rodriguez's sentence, the district court began with a base offense level of 13 for violation of 31 U.S.C. § 5324, as provided by U.S.S.G. § 2S1.3(a)(1)(A). The base level was adjusted upward by five levels because of Rodriguez's knowledge that the funds were criminally derived property. In addition, Rodriguez received a one level upward adjustment because the court found that the total value of funds involved in the currency transactions exceeded $100,000, and a two level upward adjustment based on Rodriguez's role as a "organizer, leader, manager, or supervisor" in carrying out the transactions pursuant to U.S.S.G. § 3B1.1(c).[3] The district court reduced the computation by two levels, crediting Rodriguez for accepting responsibility for his conduct. Finding the total offense level to be 19 and the criminal history score to be category I, the district court sentenced Rodriguez to a term of 37 months in prison.

## II.

On appeal, Rodriguez challenges the district court's application of the Guidelines. Specifically, Rodriguez challenges the district court's two level upward adjustment for Rodriguez's alleged role as a supervisor, and the one level upward adjustment because the value of the funds exceeded $100,000. In addition, Rodriguez alleges that the government violated the plea bargain agreement and seeks specific enforcement of the agreement. In examining a challenge to a sentence based on the Guidelines, we must accept the factual findings of the district court unless they are clearly erroneous, but we fully review its application of the Guidelines for errors

---

1. 31 U.S.C. § 5313 requires financial institutions to file currency transaction reports (CTRs) with the Internal Revenue Service for every transaction involving more than $10,000 (amount prescribed by regulation). 31 U.S.C. § 5324 states that "[n]o person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transactions—

   (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a); ... or
   (3) structure or assist in structuring, or attempt to secure or assist in structuring, any transaction with one or more domestic financial institutions."
   31 U.S.C. § 5322 provides for criminal penalties for those who violate these and other sections in Title 31.

2. The government promised not to charge Rodriguez for allegedly violating 18 U.S.C. § 1956 (Laundering of monetary instruments) arising out of the currency transactions covered by the indictment, or for any violations arising out of his January 17, 1990 arrest by Texas Department of Public Safety officials for possession of 50–200 pounds of marijuana.

3. The government presented evidence of several incidents between January 25, 1989 and July 5, 1989 in which Rodriguez structured or assisted in structuring transactions which attempted to avoid the filing of CTRs. These transactions included the participation of two other persons, and, when combined with similar offenses in which Rodriguez was allegedly involved (including the two offenses that are the subject of this appeal), totalled funds of $100,750.

of law. 18 U.S.C. § 3742(e); *United States v. Barbontin*, 907 F.2d 1494, 1497 (5th Cir.1990); *United States v. Otero*, 868 F.2d 1412, 1414 (5th Cir.1989). We examine each of Rodriguez's allegations in turn.

## A. *Two Level Increase for Defendant's Role*

■■ Rodriguez challenges the district court's two level upward adjustment for Rodriguez's role in the offense pursuant to § 3B1.1(c). That section provides:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> .    .    .    .    .
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by 2 levels.

Rodriguez argues that this aggravating factor may only be applied "if the defendant maintained a leadership role in the transaction on which his conviction is based." *United States v. Mourning*, 914 F.2d 699, 705 (5th Cir.1990) (citing *United States v. Barbontin*, 907 F.2d 1494, 1498 (5th Cir.1990)). Thus, for this adjustment to be properly applied, Rodriguez argues, he must have played a leadership role during the transactions for which he was convicted—those on June 6, 1989 or July 5, 1989. The district court during the sentencing hearing heard evidence that Rodriguez had directed two other persons in conducting currency transactions on January 25, 1989, February 10, 1989, and February 15, 1989. Rodriguez argues that this is not sufficient to support this increase under § 3B1.1(c).

In *Barbontin*, this court followed cases from the District of Columbia and Second Circuits which have held that, because § 3B1.1 specifically states that this adjustment is to be "[b]ased on the defendant's role in the *offense*," § 1B1.1's use of relevant conduct to support an adjustment does not apply. *See United States v. Williams*, 891 F.2d 921, 924–26 (D.C.Cir.

1989); *United States v. Lanese*, 890 F.2d 1284, 1293–94 (2d Cir.1989). Therefore, the *Barbontin* court held that for purposes of measuring the size of the enterprise under § 3B1.1, the adjustment is "anchored to the transaction leading to the conviction." 907 F.2d at 1498. This analysis was followed by this court in *Mourning* and *United States v. Alfaro*, 919 F.2d 962, 967 (5th Cir.1990) (§ 3B1.1(b) applies only if other individuals were "involved in the specific offense to which the defendant pleaded guilty. We do not require each 'participant' to have committed each element of the offense; rather, we require each of the participants to play some role in bringing about the specific offense charged.").

A second line of cases in this circuit ignored this method of analysis and applied § 1B1.1's use of relevant conduct in determining adjustments. *See United States v. Manthei*, 913 F.2d 1130, 1133–37 (5th Cir. 1990). In *Manthei*, the court held that "the 'offense' for § 3B1.1 purposes includes 'criminal activity' greater in scope than the exact, or more limited, activity compromising the elements of the offense charged." *Id.* at 1135. The court determined that "[t]he offense of conviction involved the last link of a continuous chain of transaction in manufacturing, distributing, and retailing amphetamines" and allowed these operations to be considered in an § 3B1.1 upward adjustment for Manthei's conviction for one count of distributing two ounces of amphetamine. *Id.* at 1137.[4]

The government takes the position, with considerable candor, that the court's holding in *Barbontin* cannot be reconciled with the holding in *Manthei*. The government argues that *Barbontin* misapplies the Guidelines by ignoring U.S.S.G. § 1B1.3(a)(2). Fortunately, however, we need not resolve this conflict because we now have the benefit of the fact that *Barbontin* has been revisited. *United States v. Mir*, 919 F.2d 940 (5th Cir.1990).

---

**4.** Basically, the *Manthei* court's analysis is a vertical expansion of the word "offense" as used in § 3B1.1. Under *Manthei*, conduct in which participants played some role in bringing about the specific offense charged could be considered. *See Alfaro*, 919 F.2d at 967 & n. 22.

In *Mir*,[5] the court expanded on *Manthei* and determined, based on clarifying amendments to the Guidelines, that § 1B1.3's discussion of relevant conduct should be applied to an adjustment under § 3B1.1. In sentencing Mir for one count of possession of cocaine with intent to distribute, the district court considered separate distributions by five persons allegedly controlled by Mir in making an upward adjustment for his leadership role under § 3B1.1(a). This court affirmed, narrowly construing *Barbontin* and determining that *Barbontin* did not hold that "a trial court must don blinders and look solely to the narrowest possible offense charged when evaluating whether an upward adjustment is warranted under the guidelines." *Id.* at 944. Rather, in *Mir* we determined that *Barbontin*'s "transaction leading to the conviction" was outlined by the "contours of the underlying scheme itself" rather than merely of "the offense charged." *Id.* at 945. Thus, the sentencing court, in making an adjustment under § 3B1.1, may "consider all conduct linked to the transaction [as defined above], even if it falls outside the four corners of the conviction itself." *Id.* at 946.[6]

Turning to the Guidelines themselves, after the base offense level is determined by reference to Chapter Two of the Guidelines and any other adjustments required by that chapter are made, the court must look to further possible adjustments in Chapter Three. In this case, § 3B1.1 allows an upward adjustment for "aggravating role."[7]

In determining which subsection of § 3B1.1 is applicable, the court must turn to Chapter One to assist in this application.[8] In this case, § 1B1.3 informs the court as to what relevant conduct is to be included in analysis of sections in Chapter Two and Chapter Three.[9] Section 1B1.-3(a)(1) states that "solely with respect to offenses of a character for which § 3D1.2(d) would *require* grouping of multiple counts, all such acts and omissions that were part of the *same course of conduct or common scheme or plan* as the offense of conviction [should be considered in determining adjustments in Chapter Three]." (emphasis added).

In this case, § 2S1.3 (Failure to Report Monetary Transactions) is specifically included in § 3D1.2.[10] Thus, we may include in our examination of relevant conduct all "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2).

The transactions in which Rodriguez was found to control two other persons were part of the same "underlying scheme," as well as the "same course of conduct or common scheme or plan," as the offense of conviction. Thus, based on the Guidelines and this court's recent decision in *Mir*, we hold that the district court did not err by considering these transactions in determining Rodriguez's role.

### B. *One Level Increase for Value of Funds*

■ Rodriguez next contends that the district court erred by including transac-

---

**5.** *Mir* involved not only the same issue as *Barbontin*, but the very same cocaine distribution ring. *Id.* at 944.

**6.** The application of § 1B1.3's relevant conduct analysis in *Mir* is a horizontal expansion of "offense" as used in § 3B1.1.

**7.** There is a parallel downward adjustment for "mitigating role" addressed in § 3B1.2.

**8.** § 1B1.1 does an excellent job of assisting in step-by-step analysis under the Guidelines.

**9.** Although the Introductory Commentary to Chapter Three Part B now makes it explicit that

§ 1B1.3 is to be consulted for relevant conduct, the 1990 amendments did not change the application of this section; they merely *clarified* what already existed under a careful reading of the Guidelines.

**10.** This is the logical place where our cases differ from those in *Williams*, 891 F.2d 921 (D.C.Cir.1989) and *Lanese*, 890 F.2d 1284 (2d Cir.1989). Both of these cases involved offenses which would not specifically be included in § 3D1.2. *Williams*, 891 F.2d at 922–23 n. 1 (U.S.S.G. § 2K2.3); *Lanese*, 890 F.2d at 1292 (U.S.S.G. § 2E1.1). Thus, § 1B1.3's use of relevant conduct in Chapter Three adjustments would not have been appropriate in either *Williams* or *Lanese*.

tions other than those for which he was convicted in determining that the value of the funds that Rodriguez had controlled was over $100,000. He cites *Barbontin* for the proposition that only funds "anchored to the transaction leading to the conviction" are relevant for purposes of sentence enhancement.

Again, using the same analysis as in Part II.A. above, we find Rodriguez's argument to be misguided. Because the funds involved in these transactions were "part of the same course of conduct or common scheme or plan as the offense of conviction," they may be considered as relevant conduct in an adjustment under Chapter Three of the Guidelines. Thus, we affirm the district court's one level increase for the value of funds involved.

### C. *Alleged Breach of Plea Agreement*

Lastly, Rodriguez contends that the U.S. Attorney breached the plea agreement by seeking enhancements of Rodriguez's sentence by the use of offenses not included in the indictment. Thus, he requests "specific enforcement" of the plea bargain agreement under *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

This allegation has absolutely no merit. A prosecutor may inform the court of mitigating and aggravating factors in the determination of the sentence. The prosecutor merely agreed not to prosecute Rodriguez for these offenses, not to withhold facts from the court. See *United States v. Rivera*, 879 F.2d 1247, 1252 (5th Cir.1989); *United States v. Prince*, 868 F.2d 1379, 1385 (5th Cir.1989). Thus, there is no "specific enforcement" of the plea bargain agreement required in this case.

### III.

Based on the foregoing, the sentence of Jose Armando Rodriguez is affirmed.

AFFIRMED.