**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 91-3639
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

FRANK H. BETHLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Middle District of Louisiana
_____

(September 14, 1992)

Before REYNALDO G. GARZA, DAVIS, and BARKSDALE, Circuit Judges.

DAVIS, Circuit Judge:

Frank H. Bethley was charged with possession of cocaine with intent to distribute, in violation of 21 U.S.C. 841(a)(1). After a jury trial, he was convicted and sentenced to 120 months imprisonment, to be followed by three years of supervised release. We find no error and affirm.

I.

As part of an investigation into the criminal activities of Betty Chube, the Drug Enforcement Administration obtained the assistance of Detective Willie Turner, Livingston Parish Sheriff's Office, to act in an undercover capacity as a cocaine purchaser. On January 18, 1991, the undercover agent negotiated with Betty Chube by phone to purchase five ounces of cocaine. After Chube

agreed to make the sale she telephoned Frank Bethley, and asked him to come to her residence and help complete the transaction.

When Turner arrived at Chube's residence, Bethley walked out of the residence and approached Turner, indicating that he had the cocaine. Before Bethley delivered the cocaine, Bethley noticed other agents approaching the residence. He immediately went back into the residence, pulled a bag from his jacket, and threw it into the lap of Bertell Roddy, who lived with Chube. The agents secured this bag, which contained 139.9 grams of cocaine.

Bethley's trial revealed that, for six months prior to this offense, Bethley had purchased cocaine from Chube five to six times a month, in quantities ranging from one to three ounces.

Bethley challenges his conviction on two grounds. First, he argues that he was denied due process because Bertell Roddy, a government witness, failed to disclose a federal felony conviction. Second, he argues that the evidence is insufficient to support his conviction. Bethley also contends that the district court erred in calculating his sentence under the Guidelines. We consider all of these arguments below.

## II.

### A.

Bethley argues first that his conviction resulted from the perjured testimony of Bertell Roddy, which the government knowingly failed to correct. During Bethley's trial, the following exchange occurred between counsel for Bethley and Bertell Roddy:

> Q. Within the last ten years, how many crimes have you been convicted of, felony?
>
> A. One.

Q. One, in state court?

A. That I know of.

Despite the fact that Roddy disclosed his state felony conviction, he did not disclose that, just months earlier, he had pleaded guilty to a federal felony charge as well.

The government must not withhold potentially exculpatory evidence from the accused. **Giglio v. United States**, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Moreover, the government must not deliberately use perjured testimony or encourage the use of perjured testimony. **Napue v. Illinois**, 360 U.S. 264, 269-70, 79 S.Ct. 1173, 1177-8, 3 L.Ed.2d 1217 (1959); **United States v. Cervantes-Pacheco**, 826 F.2d 310, 315 (5th Cir. 1987).

The record shows that the United States gave Bethley a copy of Roddy's state and federal rap sheets, as well as a copy of Roddy's plea agreement for the federal offense. Moreover, the district court told the jury that Roddy had entered a plea of guilty to a federal offense. It is not clear whether Roddy understood that a conviction following a plea agreement is just that--a conviction. However, counsel for Bethley did not follow up on Roddy's response about his convictions by directing Roddy's attention to the plea agreement. The record belies Bethley's argument that the government withheld material evidence from Bethley, or that Bethley's conviction resulted from perjured testimony.

B.

Bethley argues next that the evidence is insufficient to support his conviction under 18 U.S.C. § 841(a)(1). In reviewing this challenge, our task is to determine whether any reasonable

3

jury could have found Bethley guilty on the evidence presented.  In considering the permissible inference we must view the evidence in a light most favorable to the verdict.  **United States v. Black**, 644 F.2d 445 (5th Cir. 1981).

Betty Chube testified that she told Bethley that she had five ounces of cocaine inside a paper sack.  She told him that her new customer to whom the cocaine was to be delivered was a relative of one of their mutual acquaintances.  After Willie Turner, the undercover officer, arrived, Chube reminded Bethley of the amount of cocaine in the sack and the price per ounce of cocaine that he was to obtain from Turner.  The defendant took the sack containing the cocaine to meet Turner.

Turner testified that when he arrived at Chube's house, Bethley came out, approached him, and told him that he had the merchandise and was ready to deal with him.  Bethley pointed to a bulge in his jacket as he spoke to Turner.  Bethley then tried to enter Turner's car to complete this transaction, repeating his earlier statement to Turner.  Turner, however, replied that he preferred to deal with Betty Chube.  During this exchange, unmarked cars, which Bethley suspected were occupied by police, slowly approached Chube's house.  Seeing these unmarked vehicles, Bethley turned around and quickly returned to the residence where he threw the bag to Bertell Roddy.  Before doing so, he told Chube that "they" were coming.

Bertell Roddy testified that after Turner's arrival and before Bethley left the house to meet him, Chube told Bethley that she had

4

five ounces of cocaine and wanted $1,100 per ounce. Officers found approximately five ounces of cocaine in the paper sack.

The above evidence is adequate to support the jury's verdict that Bethley possessed cocaine with the intent to distribute, in violation of 21 U.S.C. 841(a)(1).

### III.

Bethley argues that the district court made three errors in calculating Bethley's sentence under the Federal Sentencing Guidelines. First, Bethley contends, the district court improperly calculated the amount of cocaine for sentencing purposes by including cocaine that Bethley had purchased in previous transactions. Second, Bethley argues that the district court improperly refused to grant Bethley minimal or minor participant status, which would have resulted in a reduction of the base offense level by either 4 or 2 points. Third, Bethley argues that the district court improperly raised Bethley's base offense level by 2 points for obstruction of justice. We consider these arguments below.

### A.

The district court found that Bethley had distributed a minimum of 30 ounces of cocaine during the six months prior to the offense for which Bethley was convicted. Based on this finding, the district court included 30 ounces of cocaine as relevant conduct under § 1B1.3(a)(2) of the Guidelines and increased the base offense level by eight points. Bethley disputes both the amount calculated and its relevance to the offense of conviction.

Chube testified at trial that she sold Bethley between one and

5

three ounces of cocaine, five or six times a month, for the six months prior to the incident for which Bethley was convicted. The evidence also revealed that Bethley possessed a pager from July 1990 to January 18, 1991, and that his only employment for several years before January 18, 1991 was assisting his mother with her home day care service, in return for her financial assistance. A May, 1990 police search of Bethley's bedroom in his residence revealed $1,200 cash, a .45 caliber automatic pistol, and a small plastic bag of cocaine.

Bethley objected to the district court's use of the additional 30 ounces of cocaine. He stated that he consumed the cocaine he purchased from Chube. He told the probation officer that he used cocaine at least three times per week. However, an officer from the Drug Enforcement Administration testified at the sentencing hearing that the amount of cocaine that Bethley purchased from Chube was not consistent with personal consumption. The district court was entitled to reject Bethley's statement that he consumed this relatively large quantity of cocaine. Bethley argues that his indigence indicated that he did not distribute cocaine. But the district court was entitled to find that a cocaine distributor who also has a cocaine habit does not universally enjoy financial success.

To account for Bethley's likely personal use of the cocaine, the district court made a conservative estimate of the amount that Bethley distributed; the court assumed that Bethley distributed five ounces per month for six months, resulting in a total quantity

of 30 ounces.  The district court's findings underlying this calculation are not clearly erroneous.

Bethley argues alternatively that even if we accept the district court's finding that he distributed 30 ounces of cocaine, the court nevertheless erred in including this as "relevant conduct" under the Guidelines.

U.S.S.G. § 1B1.3(a)(2) governs this issue.  It mandates that:

> [T]he base offense level where the guideline specifies more than one base offense level . . . shall be determined on the basis of the following:
>
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.[1]

We must therefore determine whether the district court clearly erred in finding that Bethley distributed the 30 ounces of cocaine as part of "the same course of conduct or part of a common scheme or plan as the count of conviction." **United States v. Byrd**, 898 F.2d 450, 452 (5th Cir. 1990).

To qualify as relevant conduct, the prior conduct must pass the test of similarity, regularity and temporal proximity. **United States v. Hahn**, 960 F.2d 903, 910 (9th Cir. 1992).  In other words, there must be "'sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct.'" **United States v. Santiago**, 906 F.2d 867, 872 (2d Cir. 1990) (quoting William W.

---

[1]The term "offenses of a character for which § 3D1.2(d) would require grouping in multiple counts" does not require the defendant, in fact, to have been convicted of multiple counts. U.S.S.G. § 1B1.3, Application Note 2.

7

Wilkins, Jr. and John R. Steer, **Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines**, 41 S.C.L.Rev. 495, 515-16 (1990)). "When one component is absent, . . . courts must look for a stronger presence of at least one of the other components." **United States v. Hahn**, 960 F.2d 903, 910 (9th Cir. 1992).

Bethley's cocaine distribution activities took place within six months of the offense for which he was convicted. Moreover, those activities were of a continuous nature. The quantities involved were similar--ounce quantities. Finally, the source and type of drug were the same. The district court's conclusion that Bethley's distribution of 30 ounces of cocaine was relevant conduct to his offense of conviction is not clearly erroneous. See **United States v. Moore**, 927 F.2d 825 (5th Cir.), **cert. denied**, ___ U.S. ___, 112 S.Ct. 205, 116 L.Ed.2d 164 (1991).

                              B.

Bethley argues next that his participation in the offense for which he was convicted was minimal, or at least minor. He therefore argues that the district court improperly refused to downwardly adjust his offense level under U.S.S.G. § 3B1.2.

Section 3B1.2 of the Guidelines tells the sentencing judge to decrease the defendant's offense level by 4 levels "if the defendant was a minimal participant in any criminal activity," or by 2 levels "if the defendant was a minor participant in any criminal activity." A "minimal participant" is one who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2(a), Application Note 1. A "minor participant" is a participant who is "less culpable than most other

8

participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b), Application Note 3.

The introductory commentary to § 3B explains that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), . . . and not solely on the basis of elements and acts cited in the count of conviction." See **United States v. Rodriguez**, 925 F.2d 107, 111 (5th Cir. 1991). We use the "clearly erroneous" standard when reviewing a district court's findings of a defendant's status during a criminal offense. **United States v. Mejia-Orosco**, 867 F.2d 216, 221 (5th Cir.), **cert. denied**, 493 U.S. 866, 110 S.Ct. 187, 107 L.Ed.2d 142 (1989).

We have already concluded that the district court did not clearly err when it counted Bethley's prior cocaine distribution as related conduct under § 1B1.3 of the Guidelines. Therefore, the district court properly considered Bethley's prior cocaine distribution in its determination under § 3B1.2 of the Guidelines that Bethley was not a minimal or minor participant.

We have held that a "mule" or transporter of drugs may not be entitled to minor or minimal status. **United States v. Buenrostro**, 868 F.2d 135, 137-38 (5th Cir. 1989), **cert. denied**, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). And Bethley's activity was not limited to a single delivery of drugs. He regularly purchased cocaine and sold it during the six months preceding his arrest. The district court did not clearly err in declining downward adjustment for minor or minimal status.

C.

9

Bethley contends finally that the district court improperly concluded that he obstructed justice within the meaning of U.S.S.G. § 3C1.1.  Thus, he argues, the district court should not have upwardly adjusted his offense level by two points under that section.

Section 3C1.1 of the Guidelines directs a district court to increase a defendant's offense level by 2 points "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense."

Application Note 3 provides a "non-exhaustive list of examples" of the type of conduct that this guideline contemplates. That list includes:

> (a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;
>
> (b) committing, suborning, or attempting to suborn perjury;
>
> (c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;
>
> (d) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . ., or attempting to do so.

Effective November 1, 1990, part (d) of Application note 3 has been amended to include the words:

> if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender;

10

A district court's determination that a defendant has obstructed justice within the meaning of U.S.S.G. § 3C1.1 is subject to the clearly erroneous standard of review. **United States v. Paden**, 908 F.2d 1229, 1236 (5th Cir. 1990), **cert. denied**, ___ U.S. ___, 111 S. Ct. 710, 112 L.Ed.2d 699 (1991).

The district court concluded that Bethley ran from the officer, removed the drugs from his jacket, and put the drugs in the hands of Bertell Roddy. The court then concluded that these three actions, taken together, constituted obstruction of justice within the meaning of § 3C1.1 and Application Note 3(d). Specifically addressing the "standing alone" language at the end of Application Note 3(d), the district court said that it did not base its finding on the removal and the running from the officer "standing alone," but, in addition, "the placing of the particular bag which included the cocaine into the hands of another defendant." This action, the court said, was a "material consideration," within the meaning of § 3C1.1.

The district court also accepted Ms. Chube's testimony that Bethley contacted her on at least five occasions attempting to persuade her to sign an affidavit swearing he was not involved in the offense, and that, on one occasion, he told her "I would do it for you." The court then held that this conduct constituted obstruction of justice within the meaning of § 3C1.1 and Application Notes 3(b) and 3(a).

We uphold the district court's finding of obstruction of justice, based on the combination of Bethley's placing the bag of cocaine into the hands of Bertell Roddy and his attempts to get

11

Chube to sign a false affidavit.  Therefore, we need not decide whether Bethley's actions at the time of his arrest, alone, were sufficient to constitute obstruction of justice within the meaning of § 3C1.1.

IV.

For the reasons stated above, we affirm Bethley's conviction and sentence.

AFFIRMED.