UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-60144
Summary Calendar
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    versus

ALFREDO HERNANDEZ-CORONADO,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

(November 25, 1994)

Before GOLDBERG, JOLLY, and JONES, Circuit Judges.

PER CURIAM:

     The appellant, Alfredo Hernandez-Coronado, plead guilty to possession with intent to distribute approximately 315 pounds (143.1 kilograms) of marijuana.  The district court sentenced Hernandez to the mandatory minimum sentence of 60 months.  Hernandez appealed to this court, arguing that the district court erred in considering all of the marijuana seized in connection with his arrest when determining his sentence.  We affirm.

BACKGROUND

     Jesus Luna offered Hernandez $300 to carry a package of

marijuana from Mexico to the United States.  Hernandez accepted, and the two men walked to a place where they met approximately eleven other individuals.  Each person carried a bag containing about 30 pounds of marijuana.  At Hernandez's suggestion, the group walked by night and rested by day to avoid detection.  One evening, U.S. Border Patrol agents confronted them, and the group scattered.  The agents caught Hernandez and another individual and seized eleven bags of marijuana weighing roughly 30 pounds apiece.

DISCUSSION

The crux of Hernandez's argument is that the district court erred in finding that Hernandez possessed all 315 pounds of marijuana seized for sentencing purposes.  Hernandez claims that his agreement with Luna extended only to the bundle he was charged with carrying, and that he did not know any of the other individuals carrying the marijuana.  Therefore, Hernandez argues he possessed only the bag of marijuana he carried and that his sentence should reflect only that amount.

Under U.S.S.G. § 2D1.1(a)(3), the offense level of a defendant convicted of a drug trafficking offense is determined by the quantity of drugs involved in the offense.  This quantity includes both drugs with which the defendant was directly involved <u>and</u> drugs that can be attributed to the defendant in a conspiracy as part of his relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B).  This section defines relevant conduct as "all reasonably foreseeable acts and omissions of others in furtherance of jointly undertaken criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B).  <u>See</u> <u>United States v. Mir</u>,

2

919 F.2d 940 (5th Cir. 1990).

The appellant relies heavily on U.S. v. Evbuomwan, 992 F.2d 70 (5th Cir. 1993). In Evbuomwan, this court held that in order for conduct to be conspiratorial under U.S.S.G. § 1B1.3(a)(1)(B), the act or omission to be both reasonably foreseeable and within the scope of the defendant's agreement. Id. at 72. In that case, the defendant's sentence had been computed by attributing all of the funds stolen in a check fraud scheme. Although the loss attributable to the defendant's fraud was $1,500, the district court found the defendant to be liable for the $90,471 pilfered by the entire check fraud scheme. The district court reasoned that the actions of the other participants in the scheme were reasonably foreseeable to the defendant, and therefore the entire scheme was properly considered relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B). We reversed, stating that mere foreseeability is not a sufficient nexus to find conspiratorial conduct under U.S.S.G. § 1B1.3(a)(1)(B). It is also necessary for the act or omission in the conspiratorial conduct to be within the scope of the defendant's agreement to undertake criminal activity. Id. at 74. In Evbuomwan, the record did not support a finding that the entire loss attributable to the credit card scheme was within the scope of the defendant's agreement with his co-conspirators.

The case at hand is distinguishable from Evbuomwan. While Hernandez originally intended to carry only his bundle, he joined a group of other individuals and together they transported the marijuana. Hernandez accepted his role within the larger unit.

3

Hernandez knew about the other criminal actors, with whom he walked while carrying the marijuana.  Hernandez relied on the others for support and assistance, and they relied on him, as demonstrated by Hernandez's advice to travel at night to avoid detection.  Therefore, the criminal enterprise, which included all of the seized marijuana, was reasonably foreseeable to Hernandez and he agreed to be a part of it.  The holding in Evbuomwan affords no shelter for Hernandez.

The facts surrounding Hernandez's criminal activity falls squarely within the criteria for inclusion within U.S.S.G. § 1B1.3(a)(1)(B).[1]  In fact, one of the examples in the application notes of that section is factually identical to the case at hand.  The example states:

> "Defendants T, U, V, and W are hired by a supplier to backpack a quantity of marihuana across the border from Mexico into the United States.  Defendants T, U, V, and W receive their individual shipments from the supplier at the same time and coordinate their importation efforts by walking across the border together for mutual assistance and protection.  Each defendant is accountable for the aggregate quantity of marihuana transported by the four defendants.  The four defendants engaged in a jointly undertaken criminal activity, the object of which was the importation of the four backpacks containing marihuana . . . and aided and abetted each other's actions . . . in carrying out the jointly undertaken criminal activity."

U.S.S.G. § 1B1.3(a)(1)(B), comment. (n.(2)(c)(8)).  "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading

---

[1] See also United States v. Gutierrez, 1993 U.S.App.LEXIS 26046 (5th Cir. Sept. 20 1993).

of, that guideline."  <u>Stinson v. United States</u>, 113 S.Ct. 1913, 1915 (1993).  The similarities between this illustration and the facts of this case are striking.

For the above stated reasons, we AFFIRM.