**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-40636
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ANTONIO DEWAYNE FRAZIER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(G-95-CR-10-3)
_____

July 16, 1998

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Antonio Frazier appeals his conviction of, and sentencing for, one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, or "crack." Finding no reversible error, we affirm.

I.

While incarcerated in the Galveston County, Texas, jail for a violation of the terms of parole for a state drug offense, Frazier was visited by two Drug Enforcement Agency ("DEA") agents who were

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

investigating a drug ring in League City, Texas. Special Agents Michael Moser and Hugh Hawkins solicited Frazier's cooperation in learning about the drug operations of Michael Raven, who the DEA believed was a major distributor of crack in the League City area.

Before visiting Frazier in the county jail, however, the DEA contacted the Galveston County District Attorney's office to inquire whether Frazier was represented by counsel. The D.A.'s office told the DEA agents that Kevin Rekoff had represented Frazier in the state proceeding for which he was then incarcerated. The U.S. Attorney's Office thereafter contacted Rekoff to ask his permission for the agents to speak with Frazier about the federal investigation.

Rekoff told the Assistant U.S. Attorney that he could not give or deny permission because he no longer represented Frazier. The Agents subsequently contacted Rekoff and scheduled a meeting later that day so that they could discuss the agents' impending interview. Rekoff testified that, at the meeting, he again reiterated to the agents that he could not give them permission to meet with Frazier because he no longer represented him. Apparently knowing of no other attorney representing Frazier, Rekoff gave the agents his business card with his cellular phone number written on the back. Rekoff told the agents to give the card to Frazier and tell him that Rekoff was available should Frazier wish to consult with him.

When the agents arrived at the county jail, they informed

Frazier that they had spoken with Rekoff and produced his business card. The agents told Frazier that Rekoff "gave them permission" to speak with him. Frazier and the agents contest whether the agents then told Frazier that Rekoff "told him to cooperate" with the agents. In any case, thereafter, Frazier agreed to give a written statement and did so after receiving his *Miranda* warnings both orally and in writing. He subsequently signed a waiver of his rights and proceeded to disclose the extent of his drug dealing with Raven. Frazier did, however, request§§and the officers agreed§§not to include the other persons with whom he dealt in his confession.

After Frazier was released from the county jail, he voluntarily traveled to the DEA's Galveston office for a debriefing. He again was read his *Miranda* rights, and he again provided information without requesting an attorney. Agent Moser prepared a summary of these oral statements.

Frazier, Raven, and others associated with the Raven's drug ring were subsequently indicted. Although Frazier had signed a waiver of his rights and made self-incriminatory statements, he recanted and pleaded not guilty.

Frazier moved to suppress his self-incriminatory statements as involuntarily given. He argued that Agents Moser and Hawkins told him that his former lawyer, Rekoff, encouraged him to cooperate with the police, when, in fact, Rekoff denied ever making such a

3

statement.

A magistrate judge held a hearing and heard the testimony of Frazier, Rekoff, and the agents.  Frazier testified that the agents told him that Rekoff encouraged his cooperation with the agents.

On cross-examination, Frazier admitted that, at the time, Rekoff was not his attorney and he did not seek hisSSor otherSScounsel.

Rekoff testified that when the agents arrived at his office, he reiterated what he had told the Assistant U.S. AttorneySSthat he could neither grant nor deny permission for the agents to speak with Frazier, as Rekoff was no longer his attorney.  Rekoff also denied that he had ever told the agents to tell Frazier that he thought Frazier should cooperate.

The agents testified that Rekoff did give them permission to meet with Frazier.  They also stated under oath that they had showed Frazier Rekoff's business card and told him that Rekoff had given them permission to speak with him.  They denied, however, that they ever told the defendant that Rekoff encouraged him to cooperate.  On the stand, they stated that they had informed Frazier that he was likely to be indicted; that they had talked to Rekoff, and Rekoff offered to speak with Frazier if Frazier wished; and that Frazier thereafter had decided to waive his rights and tell the agents some, but not all, of what he knew of Raven's operations.

The magistrate judge was troubled by the agents' display of

4

Rekoff's business card, noting that the agents were using the business card for the "psychological advantage" of putting Frazier at ease. Ultimately, however, the magistrate judge found that the agents never explicitly told Frazier that Rekoff wanted him to cooperate with them. Given this fact-finding, the magistrate judge concluded that the use of the business card did not amount to the "official overreaching" necessary to suppress the confession as involuntarily made. The district court, after a *de novo* review of the transcript of the hearing before the magistrate judge, adopted the report and recommendation over Frazier's objections.

Frazier was tried before a jury. The confession and Moser's summary of Frazier's oral statements were read to the jury, but all references to the other defendants were redacted. Several witnesses also testified that they had seen Frazier dealing cocaine and crack with Raven and Raven's associates.

When the government rested, the defense moved for judgment of acquittal, which the court denied. The defense rested without introducing testimony. The jury returned a verdict of guilty, and the judge sentenced Frazier to 402 months' imprisonment.

## II.

Frazier contends that the court erred by failing to suppress his written and oral self-incriminatory statements, which he claims were involuntarily made. We review factual determinations made in the course of a suppression hearing for clear error. *See, e.g.,*

5

*United States v. Rojas-Martinez*, 968 F.2d 415, 418 (5th Cir. 1992) (citation omitted).  Yet, we make "an independent review of the legal conclusion of voluntariness."  *Id*.

"Voluntariness [of a confession] depends upon the totality of the circumstances and must be evaluated on a case-by-case basis." *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "[A] confession is voluntary in the absence of official overreaching, in the form either of direct coercion or subtle forms of psychological persuasion."  *Id.* (citations omitted).  The government bears the burden of proving by a preponderance of the evidence that a defendant has waived his rights voluntarily.  *See id.* at 417.

At the hearing on the motion to suppress, the main factual dispute concerned whether the agents affirmatively told Frazier that Rekoff, his former attorney, said that he *should* talk to the agents, or whether, instead, the agents merely related that Rekoff said that the agents *could* talk with Frazier if Frazier so wished. Predictably, Frazier testified that the former representation was made, and the officers denied it.  The court credited the officers' testimony over Frazier's.

Frazier bases his challenge to the factual finding on the cross-examination testimony of Agent Moser, which contains what Frazier characterizes as an admission that Moser told Frazier that the agents had contacted Rekoff and that Rekoff had told them to

6

tell Frazier that it was "O.K." for Frazier to talk to them. The record, however, belies Frazier's characterization of Moser's cross-examination testimony. Although Frazier attempted to get Moser to make such an admission on cross-examination, Moser stated that Frazier's version of the events was "not even close to a fair interpretation" of the conversation that the agents had with Frazier. Moser testified that Rekoff "gave [the agents] permission to talk to" the defendant and that they gave Frazier Rekoff's business card and told him to feel free to contact Rekoff. The factual finding on this issue was not clearly erroneous.

Accordingly, we must decide whether the agents' representations to Frazier that the defendant's former attorney "gave the agents permission to speak with the defendant," and the agents' showing Frazier Rekoff's business card and telling him that his former attorney had stated that he should "feel free" to contact him, constitutes the coercion necessary to make his subsequent confession involuntary. We conclude that these actions do not constitute "official overreaching" and thus did not give rise to an involuntary confession.

"[T]here is nothing inherently wrong with efforts to create a climate for confession. Neither 'mere emotionalism and confusion,' nor mere 'trickery' will alone necessarily invalidate a confession." *Hawkins v. Lynaugh*, 844 F.2d 1132, 1140 (5th Cir. 1988) (citations omitted). When a self-incriminatory statement is

7

given in the absence of an attorney, however, the government bears a "heavy burden" of showing a knowing and intelligent waiver. *Self v. Collins*, 973 F.2d 1198, 1206 (5th Cir. 1992) (quoting *Miranda v. Arizona*, 384 U.S. 436, 475 (1966)).

It follows that "[t]he waiver inquiry has 'two distinct dimensions': First, the relinquishment of the right must have been voluntary, in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Both parts of this test are met in this case.

Frazier made a free and deliberate choice to relinquish his rights. Although, as the magistrate judge found, the agents may have been using the business card for "psychological advantage," Frazier, by his own account, knew that Rekoff, at that point, no longer represented him. Frazier also chose not to exercise his rights to call Rekoff, or another attorney, to ask his advice. Most importantly, Frazier chose to exercise his rights partially, even in the absence of an attorney, while at the same time partially relinquishing themSSthat is, he refused to name anyone other than Raven in the confession that he gave. Because Frazier does not claim that the agents related a qualified directive from Rekoff (such as "tell only part of the story"), it is not apparent

8

why their use of the business card was able to overcome only part of Frazier's will.

Frazier also knew the consequences of waiving his rights.  He received the *Miranda* warnings both orally and in written form before deciding to speak while in jail; he also received the *Miranda* warnings again at the DEA office before he offered more self-incriminatory statements.  He was an adult with at least a high-school education.  And perhaps most of all, he was no tyro in the criminal justice system.

### III.

Frazier next challenges the sufficiency of the evidence to support his conspiracy conviction.  The district court denied his motion for judgment of acquittal on this ground, and we review that decision *de novo*.  *See United States v. Sanchez*, 961 F.2d 1169, 1179 (5th Cir. 1992).  We affirm if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict.  The evidence presented at trial need not exclude every reasonable possibility of innocence.  *See United States v. Faulkner*, 17 F.3d 745, 768 (5th Cir. 1994).

In a prosecution for a drug conspiracy, the government must prove (1) the existence of an agreement between two or more persons

to violate the narcotics laws; (2) that the defendant knew of the agreement; and (3) that he voluntarily participated in the agreement. *See United States v. Gonzalez*, 76 F.3d 1339, 1346 (5th Cir. 1996). "Proof of any element may be by circumstantial evidence, and circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, . . . be sufficient to constitute conclusive proof." *United States v. Flores-Chapa*, 48 F.3d 156, 161 (5th Cir. 1995) (internal quotations and citations omitted). "[A]ssent to a conspiracy may be inferred from acts which furthered the purpose of the conspiracy." *Id.* at 162 (internal quotations and citations omitted).

Frazier was identified by several witnesses who testified that he had sold crack to them. Two of these witnesses further testified that Frazier had obtained his crack from Raven. A government agent stated on the stand that Frazier and a co-defendant had met with a confidential informant in a motel room to discuss a crack deal on Raven's behalf. The meeting was taped by authorities, and the tape and transcript were introduced at trial. Frazier also admitted to being a crack cocaine dealer. This evidence is more than sufficient to allow a jury to conclude beyond a reasonable doubt that Frazier and Raven agreed to violate the drug laws; that Frazier knew of the agreement; and that he participated in the agreement voluntarily.

IV.

10

Frazier argues that the district court erred in failing to grant him a reduction in sentence for "acceptance of responsibility." His argument is based on his apology at sentencing that he had "no one to blame except [him]self."

Because Frazier did not object at sentencing, we review for plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." FED. R. CRIM. P. 52(b). This requires (1) that there be error; (2) that the error be plain; and (3) that the error must affect substantial rights. *See United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994) (en banc). The burden of showing prejudice lies with the defendant. *See id.* at 164. Even if an error meets this criteria, we have the discretion not to reverse if the error does not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

Section 3E1.1(a) of the Sentencing Guidelines permits a two-level reduction for acceptance of responsibility "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." *United States v. Allibhai*, 939 F.2d 244, 253 (5th Cir. 1991) (quoting U.S.S.G. § 3E1.1). "The defendant bears the burden of demonstrating to the sentencing court that he is entitled to a downward adjustment for acceptance of responsibility, and we review

11

the sentencing court's acceptance of responsibility determination with even more deference than under the pure clearly erroneous standard." *United States v. Bermea*, 30 F.3d 1539, 1577 (5th Cir. 1994) (citations omitted).

Frazier has not met his burden on this prong: "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1 cmt. 2. The district court therefore was well within its discretion.

V.

Frazier contests his base offense level. He argues that the district court erred in the amount of drugs it attributed to him and in determining that the cocaine at issue was "crack."

Frazier failed to object to the finding in the presentence report that the drug involved was crack cocaine. We thus review for plain error and find none. In addition to other evidence introduced at trial, the record reflects that Frazier admitted in his confession that the drug involved was crack.

Frazier also challenges the drug amount used in calculating his base offense level.[2] The PSR used the figure of 8.883

---

[2] Because of the sketchy record on this point, we assume *arguendo* that Frazier properly raised this argument in the district court. This assumption does not affect the outcome of our analysis.

12

kilograms.[3]

Unless a defendant submits relevant affidavits or other evidence to rebut the information in the presentence report, the district court is free to adopt the report's findings without further inquiry or explanation. *See United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1990). Here, the probation office calculated the figure primarily from Frazier's own statements admitting that he distributed as much as nine ounces of crack every three weeks. In addition, the probation office found that Frazier had participated in two transactions in July and August 1995 in which approximately 283 grams of cocaine were involved. Frazier put on no evidence to challenge these findings, which were included in the presentence report. We therefore find that the court's use of the 8.883 kilogram number in the calculation of the base offense level was not error.

AFFIRMED.

---

[3] Frazier also contends that the PSR improperly attributed Raven's crack to him, and that such amounts were not foreseeable. It appears that these contentions were not made in the district court, and we find no plain error in this regard.

13