**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alex BRYANT, Defendant–Appellant.**

No. 92–4819
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

May 6, 1993.

Stephen A. Glassell, Shreveport, LA (Court-appointed), for defendant-appellant.

Josette L. Cassiere, Asst. U.S. Atty., Joseph S. Cage, U.S. Atty., James G. Cowles, Jr., Asst. U.S. Atty., Shreveport, LA, for plaintiff-appellee.

Before KING, DAVIS and WIENER, Circuit Judges.

PER CURIAM:

Alex Bryant was charged with three counts of distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). A jury convicted Bryant of all three counts. The district court sentenced Bryant to concurrent terms of 168 months of imprisonment on all counts to be followed by four years of supervised release. Bryant appeals both his conviction and sentence. Finding no error, we affirm.

## I.

The testimony and evidence at trial revealed the following. Edward Joseph, an undercover agent for the Bossier City, Louisiana Police Department testified that on December 4, 1991, working with a confidential informant, he arranged to purchase crack cocaine from Bryant at a local gas station. Bryant, whom Joseph positively identified in court, drove into the parking lot in a blue and gray Chevrolet S–10 pickup truck later identified as belonging to Bryant's brother-in-law.[1] Bryant was accompanied by two other men, one of whom was Bryant's co-defendant, Marquale Dillard. Joseph got out of his vehicle and met Bryant and Dillard at the rear of their pickup truck. The episode was witnessed by a surveillance police officer.

Joseph discussed the amount of cocaine he would buy and the price. Bryant then decided to have Joseph sit inside the truck in the driver's seat, while Bryant sat in the passenger's seat and Dillard acted as lookout. Once inside the pickup, Bryant produced a small plastic baggie containing a half-ounce of cocaine. Joseph examined the baggie and paid Bryant $600, the agreed-upon price. Bryant counted the money and exchanged pager numbers with Joseph. On the following day, Joseph paged Bryant and arranged to meet him at the same location. Bryant showed up in the same small pickup truck with his companion Dillard. Joseph got out of his vehicle and told Bryant and Dillard at the gas island that he was ready to do business. Because of the number of people mingling in the parking lot, the parties agreed to go into the restroom. Once inside the restroom, Bryant produced a small baggie containing crack cocaine. Joseph then counted out another $600 in cash.

On the afternoon of September 13, 1991, Joseph received a page from Bryant. Joseph called the beeper number and asked Bryant whether he could provide him with an ounce of cocaine. Bryant responded that he could supply that amount. Because Joseph was not equipped to consummate the deal at that moment, however, he told Bryant to call him back around 5:00 p.m. Bryant paged Joseph at that time. Joseph returned the call and the conversation was tape-recorded by police.[2] Bryant and Joseph agreed to meet at a local Wal–Mart parking lot. After Bryant, his partner, and the informant arrived at the parking lot, Bryant walked over to Joseph's car and produced two plastic baggies containing two half-ounces of cocaine. Joseph weighed the baggies using an electronic scale and was satisfied with the amount. $1000 changed hands.

---

1. Bryant's brother-in-law Fred Hicks testified at trial that the truck belonged to him and was loaned to Bryant.

2. The tape was played before the jury, and Bryant's voice was identified.

After Joseph gave Dillard the money, Dillard got in Joseph's car and discussed the possibility of selling Joseph four more ounces of cocaine on the following Friday. They also discussed the possibility of Joseph purchasing a kilo of cocaine in the immediate future. Dillard responded that Bryant would have to get in touch with his supplier in Los Angeles before he could give a price. At trial, the Government offered into evidence the packets of cocaine that Joseph had purchased from Bryant on September 4, 5, and 13, 1991. Narcotics analysis confirmed that the baggies contained crack cocaine which cumulatively weighed 47.37 grams.

## II.

**a) The district court's failure to remove two jurors for cause**

 Bryant first argues that the court erred when it refused to remove for cause two prospective jurors who had close connections with law enforcement. Bryant challenged prospective juror Vera Bodine for cause after she stated that her husband was the chief of police of Mooringsport, Louisiana, for the previous twenty-one years. Bryant also challenged prospective juror Ray Ramsey for cause after he stated that he had been Chief Criminal Deputy Sheriff in Desoto Parish for sixteen years before he retired in 1980. Bryant also objected to Ramsey because his father was a murder victim. Bryant used two of his ten peremptory challenges on these prospective jurors after the district court denied his challenges for cause, and was left with no remaining peremptories at the close of voir dire.

We must determine whether the district court erred by refusing to disqualify the two prospective jurors for cause. It is well-established that "[t]he judge's determination as to actual bias by jurors is reviewed for manifest abuse of discretion." *United States v. Mendoza–Burciaga*, 981 F.2d 192, 197–98 (1992); *see also Mu'min v. Virginia*, —— U.S. ——, ——, 111 S.Ct. 1899, 1906, 114 L.Ed.2d 493 (1991) (appellate courts must afford wide discretion to trial courts in conducting *voir dire* of jurors). " '[T]he adequacy of *voir dire* is not easily subject to appellate review. . . . [The trial judge] must reach conclusions as to impartiality and credibility by relying on . . . evaluations of demeanor evidence and of responses to questions.' " *Mu'min*, —— U.S. at ——, 111 S.Ct. at 1904 (quoting *Rosales–Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981)). The record reflects that the district court asked Bodine if her husband's position as chief of police would affect her ability to be fair and impartial in a criminal case. Bodine responded that she could be fair and impartial, and the court credited her response. Likewise, Ramsey stated that his experience as a sheriff's deputy would not interfere with his being a fair and impartial juror. When further questioned about the murder of his father, Ramsey stated that he was a young child at the time, and had no contemporaneous memory of the murder, and possessed no general bias against criminal defendants. The district court accepted this response. Bryant fails to show that the court abused its discretion in denying his challenges for cause.[3]

---

**3.** Because Bryant's two challenges for cause were meritless, we need not reach the question of whether any error in the district court's failure to grant Bryant's two challenges was harmless because Bryant failed to show that any jurors actually seated were objectionable. Numerous cases in this and other circuits have held that a federal criminal defendant may properly raise a challenge to the district court's refusal to remove members of the venire for cause simply by exhausting all of his peremptories in removing such objectionable members. *See United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir.1976) ("[A]s a general rule it is error for a court to force a party to exhaust his perempto-

ry challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges."); *see also United States v. Dozier*, 672 F.2d 531, 547 (5th Cir.1982); *Celestine v. Blackburn*, 750 F.2d 353, 360 (5th Cir.1984); *United States v. Ricks*, 776 F.2d 455, 461–62 & n. 9 (4th Cir.1985); *United States v. Daly*, 716 F.2d 1499, 1507 (9th Cir.1983); *United States v. Butera*, 677 F.2d 1376, 1384 (11th Cir.1982); *but see United States v. Mendoza–Burciaga*, 981 F.2d 192, 197–98 (5th Cir.1992) ("Mendoza–Burciaga makes no claim that he was prejudiced by having to use the peremptory challenge to strike the [prospective juror whom he unsuccessfully challenged for

### b) The district court's limitation of Bryant's cross-examination of a prosecution witness

Bryant next asserts that the court denied him his Sixth Amendment right of confrontation because he was not permitted to cross-examine a policeman regarding a confidential informant's motivation for his involvement in the police investigation. The trial court sustained the Government's objection to the testimony after concluding that it was not relevant.

Our review of this claim requires significant deference to the district court. "Limitation of the scope and extent of cross-examination is a matter committed to the sound discretion of the trial judge reviewable only for a clear abuse of that discretion." *United States v. Merida*, 765 F.2d 1205, 1216 (5th Cir.1985). Additionally, the district court has "wide discretion in determining relevance" and this court does "not overrule it absent an abuse of discretion." *United States v. Pena*, 949 F.2d 751, 757 (5th Cir.1991).

Bryant's attorney stated that he hoped on cross-examination to establish that the informant had been arrested on drug-related charges and was trying to help himself by working with police. Bryant's attorney failed, however, to show how this information was probative of whether Bryant was guilty.[4] We observe that it was not as if the informant's testimony was significant evidence in the prosecution's case against Bryant; indeed, the informant remained confidential and did not even appear at trial. Rather, two policemen who testified at trial were eyewitnesses to all of Bryant's illegal activities. Bryant, therefore, fails to show that the district court abused its discretion when it prohibited him from cross-examining one of the policeman regarding the confidential informant's motivation.

### c) Was there constitutionally sufficient evidence?

Bryant challenges the sufficiency of the evidence to support his conviction, arguing that the only substantial evidence linking him to the transactions at issue was the testimony of Edward Joseph, the undercover policeman to whom he sold the cocaine, and Michael Kellum, an undercover agent who conducted surveillance. Bryant argues that the Government could have adduced ten additional items of evidence at trial linking him to the offense, but failed to do so—which supposedly casts doubt on the sufficiency of the eyewitness testimony upon which the Government relied. Bryant further contends that the agents' testimony is not credible because significant time passed between the alleged transactions and the in-court identifications, such that the agents could have misidentified him.[5] At trial, Bryant moved for acquittal at the close of the Government's case, which was denied, and then rested without submitting any evidence on his behalf.

In deciding the sufficiency of the evidence, this court determines whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Pruneda–Gonzalez*, 953 F.2d 190, 193 (5th Cir.), *cert. denied*, ——

---

cause] rather than someone else.... [T]here was no harm ... as the [juror challenged for cause] never served."). *See also Burlington N. R.R. v. Brotherhood of Maintenance of Way Employees*, 961 F.2d 86, 89 (5th Cir.1992) (panel decision binding in circuit unless overruled by en banc court or Supreme Court).

**4.** Furthermore, we note that in his brief, Bryant concedes that during the questioning of the policeman outside the presence of the jury, "most of the responses were not beneficial to the defendant...."

**5.** The policeman admitted that, between Bryant's trial and the sting operation involving Bryant, the policeman participated in as many as 100 other undercover transactions involving young black males such as Bryant. Bryant also points out that total time in which the eyewitnesses viewed him during the three transactions was approximately 20 minutes.

U.S. ——, 112 S.Ct. 2952, 119 L.Ed.2d 575 (1992).

"A conviction for distributing cocaine requires proof that the defendant (1) knowingly (2) distributed (3) cocaine." *United States v. Gordon*, 876 F.2d 1121, 1125 (5th Cir.1989); *see also* 21 U.S.C. § 841(a)(1). A detailed summary of the testimony and evidence at trial is contained in *supra* Part I. Viewing it in the light most favorable to the verdict, we firmly believe that a rational jury could have found the essential elements of distribution of cocaine beyond a reasonable doubt. Bryant's argument that we should find the evidence insufficient because *other* evidence could have been introduced—besides the police eyewitnesses, the tape, Fred Hicks' testimony about the pick-up truck, and the cocaine itself—is meritless. While other evidence could have been introduced at trial by the prosecution, we believe that the testimony and evidence actually introduced was quite sufficient to prove Bryant's guilt beyond a reasonable doubt.[6]

**d) Did the district court err in considering "relevant conduct" under the Sentencing Guidelines?**

■ Bryant next argues that the court erred when it considered an unadjudicated extraneous offense as "relevant conduct" in computing his base offense level under the United States Sentencing Guidelines.[7] The probation officer's presentence investigation report (PSI) noted that on November 15, 1991, a package containing 12.34 grams of crack cocaine addressed to "J. Hicks" at 1616 Templeman Street, Princeton, Louisi-

ana, arrived at the post office in Princeton. The PSI added the 12.34 grams of cocaine in the package to the 47.37 grams for which Bryant was convicted of distributing, increasing Bryant's base offense level from 30 to 32.

At the pre-sentencing hearing, Bryant contested the PSI's findings regarding this relevant conduct. Although Bryant by that point admitted that he was guilty of the three counts of conviction, he refused to admit his guilt regarding the relevant conduct. He claimed that he never lived at 1616 Templeman and that he had no knowledge of the package being shipped to that address. Michael Hembree, a special agent with the Drug Enforcement Administration, testified that the package's return addressee was a "Jasmine Bryant" from Compton, California, but that the return address listed proved to be fictitious. Appellant Bryant admitted that he moved to Louisiana from Compton,[8] but denied knowing a Jasmine Bryant. He further admitted that he had a brother-in-law named Fred Hicks, and that Fred Hicks's father's name is Johnny Hicks. Ada Smith testified she was living at 1616 Templeman at the time the package was mailed and had seen Bryant at her residence talking to her daughter. Two weeks before the package arrived, Bryant told Smith that he was expecting some clothes from California that would be arriving at 1616 Templeman. Soon thereafter Smith received a yellow slip in her mailbox indicating a package had arrived for "J. Hicks." Smith also testified that an unidentified person had relayed a message that a package would be

---

**6.** Bryant has not raised a separate due process claim challenging the reliability of the two policemen's in-court eyewitness identifications, *cf. Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), but instead challenges the possibility of misidentification as part of his sufficiency claim. Even if he had raised such a separate claim, we would reject it. There were two eyewitnesses in the instant case, both trained law enforcement officers, who viewed the defendant on numerous occasions for approximately twenty minutes. While the officers may also have viewed many other per-

sons who shared Bryant's approximate age, race, and gender between the time of the crime and trial, we simply cannot accept Bryant's argument that the officers were incapable of reliably remembering a particular individual whom they were carefully targeting in a sting operation.

**7.** *See* U.S.S.G. § 1B1.3 (discussing "relevant conduct" that may be considered during sentencing).

**8.** Compton is a part of greater Los Angeles. In his conversations with undercover police, Bryant repeatedly referred to Compton and Los Angeles synonymously.

delivered to her house containing something illicit, which she should not accept. The district court overruled Bryant's objection to the PSI's finding that the package was intended for Bryant and that it was part of his on-going drug trafficking operations.

■ In determining a defendant's sentence, a district court may consider "relevant conduct," which includes "quantities of drugs not specified in the count of conviction if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1990) (internal quotations and citations omitted); *see also* U.S.S.G. § 1B1.3(a)(2). Particularly in drug cases, this circuit has broadly defined what constitutes "the same course of conduct" or "common scheme or plan." *See, e.g., United States v. Bethley*, 973 F.2d 396, 400–401 (5th Cir.1992) (defendant's drug-related activities within six-month period considered part of "common scheme or plan"); *United States v. Moore*, 927 F.2d 825, 827–28 (5th Cir.1991) (defendant's drug-related activities in January and June of same year considered part of "common scheme or plan"); *Mir*, 919 F.2d at 943–45 (defendant's drug-related activities that were seven months apart considered part of "common scheme or plan").

■ Rather than being bound by the reasonable doubt standard that operates at the guilt-innocence phase of a trial, *see supra* Part II.c., a district court during the sentencing phase need only find by a preponderance of evidence that the defendant committed the "relevant conduct." *See Mir*, 919 F.2d at 943. Thus, specific factual findings regarding relevant conduct are reviewed on appeal only for clear error. *See United States v. Pierce*, 893 F.2d 669, 678 (5th Cir.1990); *see generally Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (a factual finding is clearly erroneous only if appellate court is, after viewing the record as a whole, "left with the definite and firm conviction that a mistake has been made").

Given the evidence of Bryant's obvious connection with the package, the trial testimony from one of the undercover police that Bryant stated that his regular drug supplier was located in Los Angeles, and the temporal proximity of the relevant conduct to the crimes of conviction, we believe that the district court did not clearly err in finding that the package of cocaine intercepted by police was part of Bryant's larger drug trafficking operation. Thus, the court properly considered the additional 12.34 grams during sentencing.

**e) Did the district court err in computing Bryant's criminal history points?**

■ Finally, Bryant argues that the district court erred in computing his criminal history points pursuant to U.S.S.G. § 4A1.2(a)(2). Specifically, Bryant argues that his three prior convictions should not have resulted in a total of nine criminal history points, but instead should have been treated as one sentence and assigned only three points. We review the district court's application of the Sentencing Guidelines *de novo*. *See United States v. White*, 945 F.2d 100, 101 (5th Cir.1991).

The Guidelines mandate that "[p]rior sentences imposed in unrelated cases are to be counted separately," while "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of [assigning criminal history points]." U.S.S.G. § 4A1.2(a)(2). The Guidelines' Application Notes define "related cases" as offenses that: "(1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." *Id.*, comment. (n. 3). Bryant asserts that three prior convictions resulting in sentences were "related cases" under the Guidelines because "it appears that ... two [of] the sentences were to run concurrently since they are the exact same sentence imposed on the same day," and because he was ordered on the same date to serve a sentence concurrent with the first two sentences.

The PSI reflects that on April 14, 1986, Bryant was arrested for possession of cocaine. He was convicted and was, in lieu

of a prison sentence or probation, required to participate in an alternative-sentencing "diversionary program." On November 28, 1987, Bryant was again arrested for possession of cocaine. He was convicted of this offense. On January 25, 1988, Bryant was sentenced to three years' probation for the November 1987 offense; a condition of the probation was that he would spend the first 88 days in jail. On that same day, the same trial judge found Bryant to be in violation of the terms of the diversionary program to which he had been assigned for the 1986 offense. Bryant was sentenced to a concurrent term of three-years' probation, with the first 88 days behind bars. On January 11, 1989, Bryant was once again arrested for cocaine possession. On March 24, 1989, Bryant was sentenced to three concurrent sixteen-month terms of imprisonment. The first sentence was for Bryant's violation of the terms of his probation that he was serving for the 1986 offense. The second sentence was for Bryant's violation of the terms of his probation that he was serving for the 1987 offense. The third sentence was imposed after Bryant pled guilty to the 1989 offense.

■ There are three major flaws with Bryant's argument that the district court should have treated those three sentences as consolidated for purposes of the Guidelines. First, Bryant did not produce evidence of an order consolidating the three cases. A court should not assume that otherwise distinct cases involving sentencing on the same day were consolidated. *See United States v. Paulk*, 917 F.2d 879, 884 (5th Cir.1990) ("Simply because sentences run concurrently and were imposed on the same day does not require the sen-

tences to be consolidated for guideline purposes absent a showing of a close factual relationship between the convictions."); *see also United States v. Ainsworth*, 932 F.2d 358, 361 (5th Cir.) ("In cases that 'proceeded to sentencing under separate docket numbers' and in which there 'was not an order of consolidation,' there [is] a significant indication that the cases were not consolidated."), *cert. denied*, —— U.S. ——, 112 S.Ct. 346, 116 L.Ed.2d 286 (1991). Because Bryant made no showing that the prior cases were consolidated or that there was a "close factual relationship" between the three cases, we will not assume the cases were consolidated for purposes of the Guidelines.

■ A second problem with Bryant's argument is that his three prior offenses were separated by intervening arrests. Under the Guidelines, prior cases resulting in sentences are to be treated as "unrelated" if the offenses of conviction were separated by intervening arrests. *See* U.S.S.G. § 4A1.2 (Application Note 3). Finally, we observe that on March 24, 1989, Bryant's probation was revoked in two separate cases and he was also sentenced to a concurrent term in a wholly distinct case. The Commentary to the Guidelines states that "[i]f ... at the time of revocation another sentence was imposed for a new criminal conviction, the conviction would be computed separately from the sentence imposed for the revocation." U.S.S.G. § 4A1.2, comment. (n. 11); *see also United States v. Castro–Perpia*, 932 F.2d 364, 365 (5th Cir. 1991). Therefore, the district court did not err when it found that Bryant's three prior sentences were unrelated and assigned criminal history points accordingly.[9]

9. Lastly, Bryant argues that he should have received two points instead of three for a prior 88–day sentence that he received for possessing cocaine on January 25, 1988. The Guidelines provide that two criminal history points are assessed for prior sentences of imprisonment of at least sixty days, but less than one year and one month. *See* U.S.S.G. § 4A1.1(a) & (b). Bryant thus was mistakenly assigned a total of sixteen criminal history points instead of fifteen points. However, subtracting one criminal history point would not change Bryant's criminal history category of VI. *See* U.S.S.G. Sentencing Table (level VI category for 13 or more criminal history points). Bryant was sentenced to 168 months, the minimum under the Guidelines for that sentencing range. A remand would be senseless as resentencing by the district court could not go below 168 months; any error was, therefore, harmless. *See Williams v. United States*, —— U.S. ——, —— ——, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992) (appellate court need not remand if, but for district court's misapplication of Guidelines, sentence would have been the same).

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.