# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————

m 01-20043

————————


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RICHARD ALLISON HAMMOND,

Defendant-Appellant.


————————————

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CR-172-1)

————————————

October 1, 2001


Before JOLLY, SMITH, and WIENER,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

 [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Richard Hammond appeals the sentence he received for embezzlement, contending that the district court erred in enhancing his sentence for actions committed by others. Finding no reversible error, we affirm.

I.

From 1971 to 1995, Hammond was president and business manager of the International Brotherhood of Teamsters Local Union 988. Between 1990 and 1995, he

repeatedly embezzled union funds by using his union-issued American Express credit card for personal expenses unrelated to legitimate Local 988 business. In 1998, he was convicted on multiple counts of embezzling union funds totaling $231,502.49 and also on several other charges not relevant to the present appeal. Of the amount in question, $41,712.49 was spent not by Hammond but by his associates, Louis Stewart and Gerald Doerr.

Stewart was secretary-treasurer of Local 988, and Doerr was its business agent, during the period when Hammond embezzled the funds. Stewart had used his own union-issued American Express card to charge $31,484.01 in personal expenses, while Doerr had embezzled $10,228.48 in the same way. The district court sentenced Hammond to fifty-one months' imprisonment, a five-year term of supervised release, and $369,000 in restitution.

We affirmed Hammond's conviction but vacated the sentence and remanded for resentencing. *United States v. Hammond*, 201 F.3d 346 (5th Cir. 1999) *("Hammond I")*. The sentence was vacated because it had been augmented as a result of the attribution of Stewart and Doerr's actions to Hammond. The panel required "a specific finding of jointly undertaken activity" if the sentence was to be upheld. *Id* at 352.

On remand, the district court reinstated the fifty-one-month sentence, convinced that the reversal of its earlier ruling had been a result of "deficient articulation" and that this court had been "looking for certain key words." The district court found "beyond a reasonable doubt" that the funds embezzled by Doerr and Stewart could be attributed to Hammond as reasonably foreseeable acts and omissions of third parties involved in jointly undertaken criminal activity.[1] Hammond again appeals his sentence.

## II.

The sentence must be affirmed if "the district court . . . ha[s] made findings establishing that (1) Hammond agreed to undertake criminal activities jointly with third parties, (2) the losses caused by the third parties were within the scope of the agreement, and (3) the third parties' misconduct was reasonably foreseeable to Hammond." *Hammond I*, 201 F.3d at 351. "A finding by a district court that conduct is part of a common scheme is a factual determination subject to review under the clearly erroneous standard." *United States v. Vital*, 68 F.3d 114, 118 (5th Cir. 1995). The district court must find that a preponderance of evidence indicates that the defendant committed the relevant conduct. *United States v. Bryant*, 991 F.2d 171, 177 (5th Cir. 1993). Thus, we reverse only if the finding that a preponderance of evidence connected Hammond to the conduct of Stewart and Doerr is clearly erroneous.

Because the record indicates a substantial likelihood that Hammond, Doerr, and Stewart had coordinated their criminal activities, the findings are not clearly erroneous. It is difficult to dispute the conclusion that Hammond was likely to have been aware of Doerr's and Stewart's illegal activities but

---

[1] As noted below, the appropriate level of proof for this case was not in fact "reasonable doubt" but preponderance of the evidence. Therefore, the finding that, beyond a reasonable doubt, Hammond had participated in a common scheme with Stewart and Doerr was unnecessary; it would have been sufficient to show that such an inference was supported by a preponderance of the evidence.

failed to report them, despite having a fiduciary duty to do so. For several years in the early 1990's, Hammond was president of Local 988 at a time when he, Doerr, and Stewart were simultaneously embezzling union funds. Hammond had ultimate responsibility for all Local 988 spending and so had a fiduciary duty to report and prevent any embezzlement by his subordinates. Similarly, Stewart and Doerr had a fiduciary duty to scrutinize Hammond's expenditures and report any potential embezzlement. As secretary-treasurer of the Local and a member of its executive board, Stewart had a especially strong responsibility in this regard.

Under the sentencing guidelines, "the court may consider any explicit or implicit agreement fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3 (comment n.2). District courts are also allowed to take into account "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A).

It is certainly possible to "infer" that an "explicit or implicit agreement" existed between Hammond, Stewart, and Doerr to cover up and perhaps even facilitate each other's embezzlement. Among the items they illegally purchased with their union-issued credit cards were hunting rifles, expensive brand-name clothing, monogrammed luggage, sporting goods, and home electronics equipment. As they reviewed the records of each other's expenditures, the three could hardly have been in any doubt that their associates were engaged in embezzlement and that these expenditures were not for legitimate union business.

From these facts, an "explicit or implicit agreement" can certainly be "fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3 (comment n.2). It is unlikely that the three embezzlers would have violated their fiduciary duty to report each other's activities or felt confident that their own criminal acts would go undetected in the absence of what the district court called a "reciprocal relationship" between them.

Thus, the judgment on remand satisfies the three criteria laid out in *Hammond I*, 201 F.3d at 351. From the evidence, it can be fairly inferred that Hammond "agreed to undertake criminal activities jointly with third parties." *Id.* And a fair inference of an "explicit or implicit agreement" is all that the sentencing guidelines require. U.S.S.G. § 1B1.3 (comment n.2). The finding that a reciprocal arrangement existed between Hammond, Stewart, and Doerr satisfies *Hammond I*'s requirement of a "specific finding of jointly undertaken activity." *Hammond I*, 201 F.3d at 352.

We do not opine that Hammond's mere knowledge of Stewart's and Doerr's activities was sufficient proof of an agreement.[2] Rather, it is the combination of his knowledge with the fact that he violated his fiduciary duty to report their misconduct, and that they in turn violated their duty to report Hammond's own embezzlement, that creates a legitimate inference of "explicit or implicit agreement" sufficient to satisfy the requirements of the guidelines. *Id.*

---

[2] *Cf. United States v. Evbuomwan*, 992 F.2d 70, 74 (5th Cir. 1992) (holding that "the mere knowledge that criminal activity is taking place is not enough for sentence enhancement under § 1B1.3").

3

There is no doubt that the district court's findings on remand satisfy the second requirement of *Hammond I*, that "the losses caused by the third parties were within the scope of the agreement." *Hammond I*, 201 F.3d at 351. By definition, an agreement reciprocally to facilitate one another's embezzlement contemplated the facilitation of precisely the sort of "losses" that Doerr and Stewart inflicted on the union. *Id.*

Finally, it is also highly likely that "the third parties' misconduct was reasonably foreseeable to Hammond." *Id.* Given that Hammond was responsible for supervising Doerr and Stewart and was embezzling union funds himself, he reasonably could foresee that his apparent reciprocal arrangement with them would facilitate the very sort of "misconduct" in which they actually engaged. *Id.*

AFFIRMED.