# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

―――――――――

m 01-50903

―――――――――

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

SOLEDAD DE JESUS MUÑOZ,

Defendant-Appellant.

―――――――――――――

Appeal from the United States District Court
for the Western District of Texas
(00-CR-2039)

―――――――――――――

August 6, 2002

Before DAVIS, JONES, and SMITH,
 Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

―――――――――――

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

A jury convicted Soledad de Jesus Muñoz of conspiracy to possess marihuana based on her ownership of a house containing 1000 pounds of marihuana and her inconsistent stories about her knowledge of the marihuana. The district court refused to grant her motion for acquittal notwithstanding the verdict and denied her motion for a new trial based on a juror's failure to reveal that his wife worked in an clerical position for the Drug Enforcement Administration ("DEA"). Finding no revers-

ible error, we affirm.

## I.

Muñoz, who was pregnant, owned a house in El Paso, Texas. Octavio Romero, her boyfriend and the father of her child, was staying at the house to assist her with the pregnancy. One day, Romero told Muñoz he had stored something in her garage. She asked what it was, and he deflected her questions.

For purposes of this appeal, we may assume that Muñoz learned of the illegal drugs the day before the arrest. Immediately after her arrest, Muñoz told FBI agents that on the day before the arrest, Romero admitted that he was storing drugs in the garage. Romero's admission upset her, but he assured her that he would get the drugs out soon, and she went to bed. Muñoz explained that she did not call the police because she was afraid they would blame her.

At trial, Muñoz changed her story and claimed to have no knowledge of the marihuana. She said that she had told the FBI agents that Romero had told her about the marihuana because she was afraid she would lose her baby if she were arrested. She thought that a confession would lead to her release. For purposes of the appeal, however, Muñoz concedes that the panel should accept the truth of her initial statements to the FBI.

On the same day Romero told Muñoz he had stored something in the garage, government agents followed a dark-colored car to a store and then to Muñoz's house. The agents had received information that the car had crossed from Mexico into the United States with a load of marihuana. After trailing the car to Muñoz's house, the agents began constant surveillance of the house.

Two days later, agents observed people removing 300 pounds of marihuana from the garage. Two officers approached with a dog handler. While the officers knocked on the door, the dog alerted near the garage. Muñoz was not there, but Romero consented to a search of the house and garage. The officers found 728 pounds of marihuana in the garage. The officers arrested Muñoz at the house.

## II.

A grand jury indicted Muñoz, Victor Manual Romero, Octavio Romero, and Michael Delgado, charging Muñoz with conspiracy to possess over 100 kilograms of marihuana with intent to distribute, 21 U.S.C. §§ 846, 841-(a)(1), 841(b)(1)(B)(vii), and maintaining a place for the purpose of distributing marihuana, 21 U.S.C. § 856(a)(1). The government did not charge Muñoz with possession of marihuana.

The court selected a jury and examined individual jurors about their history with law enforcement. The court asked about jurors' previous law enforcement experience and excused a former police officer. Two other members of the pool revealed law enforcement backgrounds, and the defense peremptorily struck them.

The court then proceeded row by row, asking the jurors whether they had "close friends" or "close family" "in law enforcement." Five jurors responded in the affirmative, but Milton Kinnard was not among them. The court questioned four jurors individually about their relationship to the friend or family member and any potential impact on their decision.

The court did not dismiss any of those jurors for cause. The defense exercised peremptory challenges to strike four of the jurors, and

2

the court empaneled a jury before it reached the fifth.

After the government rested, Muñoz moved for judgment of acquittal. The court indicated it had a problem with the conspiracy charge but denied the motion. At the close of all the evidence, Muñoz renewed her motion for acquittal, and the court denied the motion. The jury found Muñoz guilty of conspiring to possess but not guilty of maintaining a place for the purpose of distribution.

Muñoz moved for judgment of acquittal notwithstanding the verdict as to the conspiracy to possess charge and moved for a new trial on the basis of a juror's failure to disclose evidence of prejudice and bias during the voir dire. The court held a hearing that elucidated important information about the alleged juror misconduct.

Milton Kinnard served as juror number five at trial. During deliberations, Kinnard became "fed up" with another juror's extended criticisms of law enforcement and other jurors. In an attempt to quiet him, Kinnard told the other juror that his wife worked for the DEA. When another juror asked why he had not reported his wife's job to the court, Kinnard told him that he did not think it was relevant.

At the hearing, Kinnard testified that he did not know the DEA was a law enforcement agency and he had no idea what his wife did.[1]

---

[1] Kinnard's wife, Patricia Kinnard, testified that she worked as a management analyst for the DEA's El Paso Intelligence Center. She described herself as working in law enforcement. She did not perform actual intelligence work but analyzed the center's type and quantity of work. She also testified that her husband was aware of where she (continued...)

Kinnard also testified that his wife's affiliation with the DEA did not affect his deliberations or decision. The court orally denied Muñoz's motions for acquittal and a new trial.

## III.

The district court correctly refused to grant Muñoz's motion for acquittal notwithstanding the verdict. The government presented evidence that (1) Muñoz had lawful title to a house containing 1000 pounds of marihuana, (2) she had actual knowledge that the drugs were present, and (3) her story changed substantially between her arrest and trial.

We review challenges to the sufficiency of the evidence to determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Lombardi*, 138 F.3d 559, 560 (5th Cir. 1998). We consider the evidence in the light most favorable to the prosecution, and the jury may choose between reasonable interpretations of the evidence. *Id.* Taking the evidence as a whole, we then determine whether a rational trier of fact could have found that the prosecution proved the essential elements beyond a reasonable doubt. *Id.* We defer to the jury's credibility determinations. *United States v. Martinez*, 975 F.2d 159, 161-62 (5th Cir. 1992). If, however, the evidence gives equal circumstantial support to either guilt or innocence, then we must reverse. *United States v. Ortega Reyna*, 148 F.3d 540, 545 (5th Cir. 1998).

The government must prove three elements to establish a conspiracy to possess marihuana: (1) an agreement to possess marihuana with intent to distribute; (2) the defendant knew of

---

[1](...continued)
worked.

the agreement; and (3) the defendant voluntarily participated in the conspiracy. *United States v. Bermea*, 30 F.3d 1539, 1551 (5th Cir. 1994). A jury may infer these elements from circumstantial evidence: A "concert of action," slight evidence that an individual defendant was connected to a preexisting conspiracy, or presence and association plus other evidence may support finding participation in a criminal conspiracy. *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994).

Muñoz argues that the jury erroneously found that she had agreed to store the marihuana in the garage. She claims that she only failed to report the marihuana to the police within twenty-four hours, and this failure should not establish criminal liability for conspiring or agreeing to possess. The government argues that this is only one inference the jury could have drawn from the evidence: Muñoz's ownership of the house and her reversal on the knowledge question pointed to a deeper involvementSSa voluntary agreement to store the marihuana in the house.

This court's precedent requires classifying ownership of the residence where drugs are found plus actual knowledge of the drugs' presence as sufficient to support the jury's inference of an agreement to possess the drugs.[2] But in addition, the jury reasonably

could have disbelieved Muñoz's inconsistent testimony and inferred that she agreed to permit Romero to store the drugs in her house. We are reluctant to disturb the jury's judgments about the credibility of a witness's testimony.

Muñoz points to our line of cases holding that the defendant's mere presence during a crime or association with criminals cannot support a conviction for conspiracy.[3] Those

_____

[2] ...continued)
caught with large quantity of marihuana as the truck crossed the border despite absence of proof of father's actual knowledge that the truck contained cocaine).

[3] *United States v. Maltos*, 985 F.2d 743, 746-47 (5th Cir. 1992) (reversing conviction because although the environment "reek[ed] of something foul," government had not presented evidence that defendant knew of the criminal agreement or activity); *United States v. Espinoza-Saenez*, 862 F.2d 526, 538 (5th Cir. 1989) ("[N]o evidence was ever introduced from which a reasonable jury could find that Lazarin *knew* of the conspiracy."); *United States v. Gardea Carrasco*, 830 F.2d 41, 45 (5th Cir. 1987) (reversing where police saw defendant carrying some suitcases into his home that resembled suitcases used by associates in earlier drug transaction, and defendant had loaded and unloaded suitcases without proven knowledge of their contents); *United States v. Magee*, 821 F.2d 234, 238 (5th Cir. 1987) (affirming convictions for conspiracy to distribute marihuana but cited by Muñoz for the proposition that mere presence or association is not enough); *United States v. Sneed*, 705 F.2d 745, 749-50 (5th Cir. 1983) (finding that mere presence at house where conspirators discussed smuggling operation and unloaded large quantities of drugs was not enough, but stating in *dictum* that ownership of the house would be enough); *United States v. Jackson*, 700 F.2d 181,
(continued...)

_____

[2] *Garcia*, 86 F.3d at 399 (finding that participation in car swap plus connection to a house filled with cocaine supported conviction for conspiracy to possess); *Sudderth*, 681 F.2d at 994 (upholding conviction of leaseholder to warehouse containing marihuana where participation in illegal activities was supported by hearsay); *Williams-Hendricks*, 805 F.2d at 503 (upholding jury's inference of agreement where father owned truck and was traveling with his son when son was
(continued...)

4

cases differ from the instant appeal in two important ways.

First, none of these cases involved defendants who owned the legal title to the place where the drugs were found. Actual ownership of the premises has legal significance, because it tends to prove an element of the underlying substantive offense of possessing illegal drugs. This court has adopted the doctrine of "constructive possession," meaning that the ownership of the home or car where drugs are found tends to support conviction for possession.[4] Research did not unearth any cases in which the defendant owned the house containing illegal drugs and the panel described the defendant's participation as "mere presence or association."

Second, Muñoz also had actual knowledge the drugs were in the garage. She does not cite to a single case where the defendant had actual knowledge of ongoing criminal activity and the court classified his actions as mere presence or association. The cases on the insufficiency of presence and association do not apply.

Muñoz characterizes the government as arguing that knowledge of an illegal activity immediately makes one a conspirator. Not so. The government has argued that use of a person's residence for a crime, combined with his knowledge of the crime, supports the jury's *inference* that the resident has agreed to permit someone to use the house for the illegal activity. We have given the jury wide latitude to infer an agreement where the defendant has title to the premises and actual knowledge of the illegal activity. That precedent compels affirming the dismissal of the motion for acquittal.

IV.

The court also correctly refused to order a new trial after a juror belatedly disclosed that his wife worked for the DEA. The evidence supported the conclusion that the juror simply made a mistake during voir dire. And a relationship with a person in law enforcement, standing alone, does not support a excusing a juror for cause. There was no abuse of discretion in the refusal to order a new trial.

Where a juror fails to answer a question designed to ferret out possible bias, we apply the test outlined in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548

---

[3](...continued) 185-86 (5th Cir. 1983) (reversing conviction where defendant sat down at table in restaurant after two men sitting at table had completed exchange of money for drugs), *overruled on other grounds*, *Richardson v. United States*, 468 U.S. 317 (1994); *United States v. Fitzharris*, 633 F.2d 416, 422 (5th Cir. 1980) (reversing conviction based on arrival at ranch with groceries hours after police raid and cryptic references to defendant contained in documents found in the trash).

[4] If the defendant has sole control over the premises or vehicle, constructive possession alone may support conviction. *United States v. Villasensori*, 894 F.2d 1422, 1426 (5th Cir. 1990) ("This Court has defined constructive possession as 'ownership, dominion, or control over illegal drugs or dominion over the premises where drugs are found.'") (citation omitted). If, however, the defendant shared control over the premises or vehicle, the government must provide additional proof. *United States v. Crain*, 33 F.3d 480, 486 (5th Cir. 1994) ("[W]hen two or more people are occupying a place, a defendant's control over the place is not by itself enough to establish constructive possession of contraband found there.").

(1984) (plurality). *United States v. Doke*, 171 F.3d 240, 246 (5th Cir. 1999). "[A] party must first determine that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556. "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.*

### A.

Muñoz relies on cases from other circuits to argue that where the juror deliberately fails to answer a question honestly during voir dire, the lie itself provides a reason to dismiss him for cause and requires a new trial.[5] In *United States v. Bishop*, 264 F.3d 535, 555 (5th Cir.

---

[5] *E.g.*, *Dyer v. Calderon*, 151 F.3d 970, 981-82 (9th Cir. 1998) (finding that a juror who lied on voir dire form and in response to subsequent questioning by the judge about the brutal murder of her brother to remain eligible for service on jury in murder trial was presumably biased); *United States v. Colombo*, 869 F.2d 149, 151 (2d Cir. 1989) (finding that juror's deliberate concealment of her brother's status as a government attorney justified implying bias and a new trial). The Second Circuit has since limited the holding of *Colombo*. *United States v. Greer*, 285 F.3d 158, 172 (2d Cir. 2002) ("[I]n *Colombo I*, it was not simply that the lies in question were deliberate, but that the *deliberateness of the particular lies evidenced partiality*."); *United States v. Shaoul*, 41 F.3d 811, 814-15 (2d Cir. 1994) (affirming decision not to grant new trial despite juror's failure to disclose relationship to Assistant United States Attorney not involved in the case). *See also United States v. North*, 910 F.2d 843, 904-05 (D.C. Cir. 1990) ("King's concealment, then, is only one factorSSalbeit an important oneSSin the critical test for actual bias.").

2001), *cert. denied*, 122 S. Ct. 1605 (2002), we held that a juror's dishonest failure to respond to a voir dire question must be rooted in bias or prejudice to justify ordering a new trial. Where a juror failed to disclose that Texas had deferred adjudication of her embezzlement charges and placed her on supervised release, the panel would not interpret the failure to disclose as evidence of bias. *Id.* at 556. The juror presented the "plausible explanation" that her attorney in the criminal matter had told her that deferred adjudication would not count as a crime under state law. *Id.* at 556. Where the juror's failure to respond truthfully stems from a plausible misunderstanding, the court need not order a new trial based solely on the failure to respond. *Id.* at 556.[6]

The district court found that Kinnard answered honestly during the voir dire. The court asked whether anyone had friends or close relatives "in law enforcement." None of the potential jurors responded by identifying relatives who occupied clerical or administrative positions with law enforcement agencies. Kinnard might reasonably have believed that the question did not encompass such persons. Patricia Kinnard testified that her job involved number crunching and no actual law enforcement.

---

[6] Until *Bishop*, Fifth Circuit panels had not considered the deception itself as a basis for disqualifying the juror and requiring a new trial. Instead, panels scrutinized the facts withheld by the juror and determined whether that information demonstrated bias. *E.g.*, *Doke*, 171 F.3d at 246 (applying *McDonough* to jurors who had lied about past criminal history on voir dire forms); *Montoya v. Scott*, 65 F.3d 405, 418 (5th Cir. 1995) ("The district court evaluated Montoya's juror bias claim under the *McDonough* standard, and Montoya makes no argument on appeal that the court improperly applied that standard to his claim.").

After hearing Milton Kinnard's testimony, the court concluded that he "did not believe that his wife's position as an administrator and statistical analyst at EPIC could be described as a law enforcement job." All of this evidence points towards a misunderstanding or honest mistake.

Kinnard's statements in the jury room might belie his proffered reasons for failing to disclose⸺Kinnard invoked his wife's occupation when a fellow juror began derogating law enforcement. Several people testified that the follow juror had been ranting about past experiences with the FBI for a couple of hours and insulting both fellow jurors and law enforcement agents. Kinnard might reasonably have thrown out his wife's tangential relationship with law enforcement in desperation, simply to quiet the other juror. On the whole, a review under the abuse of discretion standard compels finding Kinnard's explanation "plausible." His failure to respond, standing alone, does not justify ordering a new trial.

### B.

Panels have reached opposite conclusions about whether a juror's concealed, close relationship to person in law enforcement justifies ordering a new trial. Examining the cases more closely, however, reveals that where a juror's relationship with someone in law enforcement would not justify excusing a juror for cause, the court should not order a new trial. Because Muñoz has not proven that Patricia Kinnard's job would have supported a challenge for cause, we will not order a new trial.

In *United States v. Scott*, 854 F.2d 697, 699-700 (5th Cir. 1987), we remanded for a new trial where a juror had concealed that her brother was a sheriff. During voir dire, the judge asked all of the jurors whether any close relatives served in law enforcement. *Id.* at 698. The court excused two prospective jurors whose spouses were law enforcement officials. *Id.* After witnessing the court's actions, the juror then concealed that his brother was a sheriff. *Id.* The juror explained that he failed to respond because he did not think it was relevant. *Id.* The court later found that if the juror had explained his relationship to a sheriff, the judge would have excused him for cause. *Id.* The court, however, went on to find that because the juror sincerely believed that he could act impartially, a new trial was not required. *Id.* We reversed, relying largely on the court's finding that it would have dismissed the juror for cause. *Id.* at 699.

In *United States v. Ortiz*, 942 F.2d 903, 909 (5th Cir. 1991), a juror had disclosed during voir dire that she had a brother who was a police officer, but she failed to disclose that her cousin and sister worked as secretaries in the United States Attorney's office. When questioned after the verdict, the juror explained that he was not close to his cousin and did not understand either his cousin or his sister's jobs. *Id.* Because familial ties to persons in law enforcement do not support challenges for cause, and the juror testified that his family relationships would not render him partial, we affirmed the denial of a new trial. *Id.*

We reached different conclusions in these two cases because the courts differed over whether the relative's occupation justified dismissing those particular jurors for cause. Where the district court had found that it would justify a dismissal for cause, it had an obligation to order a new trial. *Scott*, 854

F.2d at 699. Where we found that it would not justify dismissal for cause, we refused to order a new trial. *Ortiz*, 942 F.2d at 909. Both cases focus on whether a relative's employment in law enforcement requires excusing the juror for cause.

The district court correctly refused to excuse Kinnard for cause. Although the court may have the discretion to excuse a juror for cause based on a relationship with a person in law enforcement,[7] such a relationship seldom requires excusing the juror.[8] Like the situation in *Scott* and *Ortiz*, the posture of this case eliminates the need to focus on this question. Muñoz concedes "that the fact that a juror is married to someone who works for DEA in

---

[7] *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983) (affirming decision to dismiss potential juror who had known the sheriff-defendant for twenty years and decision to deny challenge to juror whose husband had been employed by another parish's police jury).

[8] *United States v. Flores*, 63 F.3d 1342, 1357-58 (5th Cir. 1995) (affirming refusal to dismiss jurors for cause who had connections to law enforcement but stated that they could remain impartial); *United States v. Bryant*, 991 F.2d 171, 174 (5th Cir. 1993) ("The record reflects that the district court asked Bodine if her husband's position as chief of police would affect her ability to be fair and impartial in a criminal case. Bodine responded that she could be fair and impartial, and the court credited her response."); *Brodon v. Butler*, 838 F.2d 776, 778 n.1 (5th Cir. 1988) (refusing to order new trial on habeas corpus matter where juror's husband had been police officer for over 20 years, and uncle was investigator in district attorney's office); *Sudds v. Maggio*, 696 F.2d 415, 416-17 (5th Cir. 1983) (holding that juror whose nephew was police officer could evaluate police testimony impartially, especially where it was only peripheral).

law enforcement would not by itself warrant a strike for cause." Muñoz instead argues that the district court would have found additional factors justified Kinnard's dismissal if the court had questioned him during voir dire.

Muñoz correctly points out that five potential jurors revealed that family members worked for law enforcement. The court asked each juror follow-up questions about his potential bias in favor of law enforcement. Muñoz argues that if Kinnard had responded truthfully to those questions, the district court would have dismissed him for cause. The court, however, did have an opportunity after trial to question Kinnard and evaluate his responses. And the court found that his wife's job did not affect his ability to decide the case impartially. The decision, after post-trial questioning, that a juror is fit deserves as much deference as its decision after voir dire.

Muñoz relies on *Colombo*, 869 F.2d at 151, to argue that Kinnard's deception deprived her of the right to exercise her peremptory challenges intelligently. She points out that she exercised four peremptory challenges against jurors who had relatives who worked in law enforcement. *McDonough*, however, focused on whether the defendant had a valid basis to challenge the juror for cause. The *McDonough* court so restricted the inquiry because the defendant can exercise a peremptory challenge for almost *any reason whatsoever*.

If we reversed convictions merely because the undisclosed information would have supported a peremptory challenge, we could never affirm a conviction where a juror mistakenly or intentionally withheld information during voir dire. Such a test would be inconsistent with past precedent and unworkable in practice.

8

AFFIRMED.