**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 11, 2013

No. 12-40136

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JOSE RAFAEL CHAVIRA

Defendant- Appellant

Appeal from the United States Court
for the Southern District of Texas, McAllen Division
7:11-CR-396-8

Before KING, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant Jose Rafael Chavira appeals his sentence following a guilty plea conviction for possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); 18 U.S.C. § 2. Chavira argues that the district court erred by including as relevant conduct under the Sentencing Guidelines a quantity of cocaine found in the attic of the house where Chavira was arrested. We agree with this argument because cocaine trafficking was not part of the same course of conduct or common scheme or plan as Chavira's offense of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40136

conviction which dealt solely with marijuana trafficking.  We therefore vacate his sentence and remand for resentencing.

I.

Jose Rafael Chavira and seven co-defendants were charged, inter alia, with possession with intent to distribute more than 1000 kilograms of marijuana (count two).  Chavira and five co-defendants were also charged with possession with intent to distribute 5 kilograms or more of cocaine (count three). Chavira pleaded guilty, pursuant to a written plea agreement, to count two.

Although the conspiracy was charged to involve three residences, Chavira was linked to only the residence referred to as the Gardinia residence.  Chavira's role was to pick up loads of marijuana from unknown locations, transport it to the Gardinia residence, and assist with the unloading and repackaging at the Gardinia residence.  Chavira was paid by the head of the operation, Edgar Zapata, to guard the Gardinia residence.  Marijuana and guns were found at the Gardinia residence.  However, Chavira was arrested at the I-J residence where 54.45 kilograms of cocaine was located in the attic and additional guns were found.

The PSR calculated Chavira's base offense level as 36.  Specifically, the PSR recommended holding Chavira accountable for 3,103.79 kilograms of marijuana and for 54.45 kilograms of cocaine, which was converted to its marijuana equivalent of 10,890 kilograms.  The total amount of marijuana was therefore 13,993.79 kilograms, resulting in a base offense level of 36, pursuant to U.S.S.G. § 2D1.1(c)(2), because Chavira was responsible for at least 10,000 kilograms but less than 30,000 kilograms of cocaine.  The PSR added two levels under § 2D1.1(b)(1) based on the weapons found at the I-J and Gardenia

2

residences. A total offense level of 38, combined with Chavira's criminal history category of I, resulted in a guidelines range of 235 to 293 months in prison.

Chavira objected to the PSR, arguing that he was not aware of the cocaine or the weapons that were found at the I-J residence and that he should receive a two-level decrease for acceptance of responsibility. At sentencing, during a sealed bench conference, the Government stated that Chavira had objected to being held responsible for the cocaine and admitted that the only "tie-in" it had between Chavira and the I-J residence was the fact that he was found there at the time of his arrest. The district court then iterated that the cocaine was discovered there. The Government responded, "[B]ut other than him having - - other than him being there, it was hidden in the attic and, as far as our investigation shows, we don't have anything other than the fact that he was present at the house." The court then reiterated that the cocaine and the I-J house were part of the conspiracy and that one of Chavira's assignments was to transfer narcotics between these locations. The Government added that Chavira transferred only marijuana. Chavira stated that his involvement in the I-J residence was limited to walking in and walking out on the day of the arrest and that he normally worked at a different location where he dealt solely with marijuana. Chavira stated that he had no knowledge of the cocaine and noted that the PSR provided that it was stored there by other individuals.

The district court did not make any specific findings regarding the cocaine; it overruled Chavira's objections, granted a three-level reduction for acceptance of responsibility, and adopted the PSR. As a result, Chavira's total offense level was 35, and his guidelines range was 168 to 210 months. The district court

No. 12-40136

sentenced Chavira to 168 months in prison and to five years of supervised release.  Chavira appealed timely.

## II.

This court reviews the district court fact findings on drug quantity and relevant conduct to see if they are clearly erroneous.  *United States v. Betancourt*, 422 F3d. 240, 246 (5th Cir. 2005) (drug quantity); *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009) (relevant conduct).  A fact finding is not clearly erroneous as long as it is plausible in light of the record as a whole.  *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998) (quoting *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir. 1991)).[1]

## III.

The base offense level for violations of § 841(a)(1) is determined by the quantity of drugs involved.  *See* U.S.S.G. § 2D1.1.  A defendant convicted of a controlled substance offense "is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity he jointly undertook." § 1B1.3(a)(1)(A) and (B), *comment. (n.2).*  With respect to offenses, like drug offenses for which § 3D1.2(d) would require grouping of multiple counts, relevant conduct also includes "all acts and omissions . . . that were part of the same course of conduct or common

---

[1] The government argues that Chavira failed to preserve the error on this issue.  After a review of the record, we disagree.  Chavira objected to the paragraph in the PSR that outlined the role assessment for Chavira and recommended that he be held responsible for the cocaine seized as well as the marijuana.  In addition at the sentencing hearing, the government and Chavira's counsel engaged in a extensive discussion with the district court regarding drug quantity in which defense counsel argued that the cocaine drug quantity should not be counted.  The issue was clearly presented to the district court and adequately preserved.

scheme or plan as the offense of conviction." § 1B1.3(a)(2); *United States v. Bryant*, 991 F.2d 171, 177 (5th Cir. 1993). Subsection (a)(2) allows a court to consider a broader range of conduct with respect to offenses to which it applies. § 1B1.3, *cmt., background.* Accordingly we focus, as did the parties, on whether Chavira's relevant conduct may include the cocaine under the broader formulation of relevant conduct under § 1B1.3(a)(2) as part of a common scheme or plan or part of the same course of conduct. In drug distribution cases, this court has "broadly defined what constitutes the 'same course of conduct' or 'common scheme or plan.'" *Rhine*, 583 F.3d at 885 (internal quotation marks and citation omitted). However, "the analysis cannot be too broad, otherwise almost any uncharged criminal activity can be painted as similar in at least one respect to the charged criminal conduct." *United States v. Ortiz*, 613 F.3d 550, 557 (5th Cir. 2010) (internal quotation marks and citation omitted).

A common scheme or plan involves two or more offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." § 1B1.3, *cmt. (n.9(A))*; *see United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009). In this case, there is no evidence that the two offenses were substantially connected by common victims or a similar modus operandi. *See* § 1B1.3, *comment. (n.9(A)).* Officers found large quantities, 299 bundles, of marijuana in two bedrooms of the Gardenia residence as well as drug packaging materials. The 55 bricks of cocaine were hidden in an attic at the I-J residence. Although Chavira admitted that he routinely dealt with marijuana, the record is devoid of any evidence linking him to cocaine distribution. None of Chavira's co-defendants indicated that he knew about the cocaine or that he participated

in transporting, handling, or guarding the cocaine.   Edgar Zapata stated that he had recently moved into the I-J residence and that "'higher-ups'" had informed him that it was his job to guard the cocaine. Padilla and De La Paz admitted that they knew that the cocaine was in the attic, and De La Paz admitted that he helped Edgar Zapata move the cocaine into the attic.  No marijuana was discovered at the I-J residence.  Although Chavira's boss and accomplice, Edgar Zapata, was clearly common to both the marijuana conspiracy and the cocaine conspiracy, there is no evidence to suggest that Chavira was involved in the cocaine conspiracy.  Nothing in the record suggests that any other co-defendant was substantially connected to both offenses.  Moreover, the Government admitted that other than the fact that Chavira was arrested at the I-J residence, no other evidence connected him to the cocaine found in the attic.  Accordingly, the cocaine cannot be treated as relevant conduct to Chavira's marijuana conviction on the basis that the two offenses were part of a common scheme or plan.

"Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.*, cmt. (n.9(B)). "To qualify as relevant conduct, the prior conduct must pass the test of similarity, regularity, and temporal proximity." *United States v. Bethley*, 973 F.2d 396, 401 (5th Cir. 1992).  When one of these factors is absent, a stronger showing of at least one other factor is required.  § 1B1.3, *cmt. (n.9(B)).*

Based on the record outlined above, the purported relevant conduct involving the cocaine was not part of the "same course of conduct" as the offense

of conviction. *See Rhine*, 583 F.3d at 886-91; § 1B1.3, *cmt. (n.9(B))*. Factors to consider in making this determination include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Rhine*, 583 F.3d at 886 (internal quotation marks and citation omitted). The temporal proximity factor is present because the cocaine was discovered during the same general time frame as the marijuana offense. *See Ortiz*, 613 F.3d at 558. However, the purported relevant conduct involving the cocaine and the marijuana offense do not share a high degree of similarity, and the regularity factor--"repeated, pattern of similar unlawful conduct directly linking the purported relevant conduct and the offense of conviction"–is lacking. *Id.*; *see United States v. Wall*, 180 F.3d 641, 646 (5th Cir. 1999) (determining that two offenses were not substantially similar because, inter alia, there was no evidence that the marijuana in each offense shared a common source or supplier and because one offense involved large loads of marijuana hidden in the wheels and gas tanks of two trucks and the other offense involved a smaller load hidden in the defendant's car).

Specifically, there is no evidence that the cocaine and marijuana shared a common source or supplier. In fact the evidence suggests that the marijuana operations were kept completely separate from the cocaine operations, making the offenses highly dissimilar. Based on the facts of this case, the only factor leaning in favor of finding that the two drug offenses were part of the same course of conduct is temporal proximity because the cocaine was discovered at the I-J residence on the same day the marijuana was discovered at the Gardinia residence and Chavira was arrested at the I-J residence where the cocaine was found.

No. 12-40136

Temporal proximity alone is insufficient to establish that the two offenses are part of the same course of conduct. In a similar case, *United States v. Ortiz*, 613 F.3d 550, 555-59 (5th Cir. 2010), this court concluded that the district court clearly erred in determining that Ortiz was responsible for cocaine found hidden in a suitcase under a bed where he had spent the night. Ortiz pleaded guilty to possession with intent to distribute marijuana, *id*. at 552, and the Government admitted that the only evidence tying Ortiz to the cocaine was the fact that he rented the apartment in which it was found; Ortiz's girlfriend claimed ownership of the suitcase. *Id*. at 553, 555-56.

This court found that there were no common victims or accomplices and that the modus operandi of the marijuana and cocaine offenses were not similar; thus, the offenses were not part of a common scheme. *Id*. at 557. Likewise, this court determined that the offenses were not part of the same course of conduct because there was no evidence that there were common accomplices, suppliers, or buyers. *Id*. at 558. In addition, the marijuana offense involved "massive quantities" of marijuana found in plain view, but the cocaine was found hidden in a suitcase. *Id*. Although the court noted that (1) the cocaine and marijuana offenses occurred temporally and physically together in the stash apartment, (2) Ortiz rented the stash apartment, and (3) Ortiz had "central responsibility" for a significant marijuana trafficking operation, this court also noted that his girlfriend claimed ownership of the suitcase containing the cocaine and that Ortiz regularly engaged in marijuana, not cocaine, trafficking. *Id*. Based on the foregoing, this court concluded that the district court clearly erred by attributing the cocaine to Ortiz as relevant conduct. *Id*. at 559. Subtracting the amount of

No. 12-40136

cocaine resulted in a lower drug quantity and a lower sentencing range; this court therefore vacated the sentence. *Id.*

In *Ortiz*, this court found that the district court erred in holding Ortiz responsible for hidden cocaine although he had significant ties to the apartment in which the cocaine was found and in spite of the fact that he was in charge of a significant marijuana-trafficking operation. In the instant case, it appears that Chavira had fewer ties to the I-J residence than Ortiz had to his stash apartment, and that Chavira had less responsibility for the marijuana operation than Ortiz. In light of the foregoing, the district court's drug-quantity determination including the cocaine as relevant conduct was not plausible in light of the record as a whole. *See Alford*, 142 F.3d at 831.

The government does not analyze the facts of this case under *Ortiz* or *Rhine*. It relies generally on the breadth of the conspiracy and the fact that Chavira did not counter the information in the PSR. However, as admitted by the government, there is nothing in the PSR linking Chavira to the cocaine in the attic of the I-J house other than the fact that he happened to be there when arrested. This is insufficient under the case law cited above.

Without the inclusion of the cocaine found in the attic, Chavira's base offense level would have been 34, which, after applying the various adjustments, would have resulted in a total offense level of 33. *See* § 2D1.1(c)(3). With a total offense level of 33 and a criminal history category of I, Chavira's guideline range would have been 135 to 168 months, which is lower than the original range of 168 to 210 months.

## IV.

Accordingly, we vacate Chavira's sentence and remand for resentencing.

No. 12-40136

SENTENCE VACATED and CASE REMANDED.